Thomas F. FARNHAM, Appellant,

v.

John F. BOONE, Sr., Respondent.

No. 53043.

Supreme Court of Missouri, Division No. 1.

Sept. 9, 1968.

The incident in question occurred at about 7:30 P.M., April 27, 1964, at Kansas City. Plaintiff was driving a 1961 Ford 4-door sedan. He was taking his son to band practice at the Gospel Assembly Church located at 3238 The Paseo. He drove south on The Paseo, a 60-foot street divided into six marked lanes, four for moving traffic and one nearest the curb on either side for parked vehicles. Plaintiff saw a parking place on the west side of the street, almost directly in front of the church. The space available was some forty feet between two parked vehicles. A driveway occupied some ten feet of this space and there were some ten feet south of the drive to a parked auto. There were twenty feet north of the drive to the nearest parked vehicle.

According to plaintiff, he headed into the parking space and pulled up to within about two feet of the vehicle to the south. Plaintiff stated first that he pulled in parallel with the curb, but he later stated that the back end "was then sticking out somewhat." He said the right front wheel was about a foot from the curb, with the back wheels extending a little farther out than the front wheels, "maybe two or three feet, maybe the car sitting on just a slight angle."

After looking in a rear-view mirror and seeing no traffic on the adjacent lane to the left, plaintiff started to back his car slowly into the parking space he intended to occupy. He turned his front wheels to get the back end over and then "cut" his wheels to get the "front end into the proper place. It could have been protruding possibly a foot, a couple of feet." When he almost reached a position where he intended to leave his auto, with his car either stopped or just preparing to stop, the vehicle was struck on the left front fender by an auto driven by defendant. Defendant's auto was damaged in the right front fender by the collision. Plaintiff did not see defendant's auto until the collision occurred.

Walter A. Raymond and Raymond, West & Strader, Kansas City, for appellant.

Roy F. Carter and Gordon N. Myerson, Kansas City, for defendant-respondent, Sprinkle, Carter, Sprinkle, Larson & Hanna, Kansas City, of counsel.

WELBORN, Commissioner.

The only issue on this appeal is whether the trial court erred in refusing to submit plaintiff's claim for damages arising from an automobile collision upon humanitarian negligence in failure to stop or slacken speed. The case was submitted on primary negligence in failing to keep careful lookout. The jury's verdict was for defendant. Plaintiff appeals.

Defendant was also looking for a place to park. He stated that he was in the first marked lane from the parking lane, that he had been driving south straight in that lane for a block and a half at about ten miles per hour, with no traffic in the lane in front of him. He did not see plaintiff's automobile before the collision. He stopped his auto after the collision within about one half its length. Plaintiff said that his auto was moved forward some two or three feet by the force of the collision. Plaintiff and his wife testified that, following the collision, defendant stated that he was looking for a parking place on the other side of the street.

The plaintiff offered first a verdict-directing instruction based upon humanitarian negligence in failing to stop. Upon refusal of that instruction, he tendered a second humanitarian instruction on failure to slacken speed. When the trial court refused those instructions on the grounds that there was no evidentiary basis for a humanitarian submission, the plaintiff tendered and the court gave an instruction on primary negligence in failure to keep a careful lookout. An instruction, offered by defendant, was given on plaintiff's contributory negligence in failing to keep a careful lookout.

■ In passing upon the issue raised on this appeal, we do, as appellant points out, view the evidence most favorably from the standpoint of plaintiff, giving him the benefit of all favorable inference to be drawn from an examination of the evidence in such light, and disregarding defendant's evidence except insofar as it may, consistently with plaintiff's theory, aid plaintiff. Thaller v. Skinner & Kennedy Company, Mo.Sup., 315 S.W.2d 124, 126 [2, 3]; Robb v. St. Louis Public Service Co., 352 Mo. 566, 178 S.W.2d 443, 444 [1, 2]; Hopper v. Conrow, Mo.Sup., 347 S.W.2d 896, 899 [1–3].

■ However, as pointed out in Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, 787 [1–3]: "Sometimes humanitarian cases require niceties in calculations for the doctrine begins to operate and seizes the facts when imminent peril arises. The duty to make his case is upon plaintiff and he must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence. If the evidence presents a situation from which liability or nonliability may be equally inferred, the court must declare that no case has been made."

This case does not admit of extensive "niceties in calculations." All of the distances, dimensions and speeds involved are either estimates or assumptions. Appellant describes this as "an 'almost escaping case' where the facts speak for themselves without the aid of opinion evidence thereby making it unnecessary to make all the calculations and demonstrate as to the requested submissions under the humanitarian doctrine."

Appellant's argument proceeds on the theory that his authomobile was in the defendant's lane of travel from the time that the appellant started to back into the parking place until the time of the collision. Basing his argument on an assumed backing speed of two miles per hour, an assumed length of plaintiff's auto of seventeen feet and the defendant's testimony of his speed at ten miles per hour, plaintiff states that defendant's vehicle traveled 75 feet during the time that plaintiff's vehicle backed an assumed seventeen feet at an assumed two miles per hour. Plaintiff then asserts: "During that entire period defendant could have seen plaintiff's automobile maneuvering to get to the curb and is charged with knowledge of its position and movements." Respondent did testify that he could see for 1½ blocks in the lane of traffic in which his vehicle was moving. Respondent also testified that the point of impact between the two vehicles was in such lane. Therefore, there can be no successful argument that plaintiff was never in the defendant's lane of traffic. However, the difficulty lies in determining

when plaintiff's entry into such lane in his parking maneuver placed him in a position of imminent peril, under the humanitarian doctrine.

The problem arises in part from the absence of measurements. For example, plaintiff's brief states that The Paseo, at the point of the collision, is sixty feet wide, divided into six lanes, each ten feet wide. Plaintiff's testimony was that he did not get more than three feet from the curb in his parking maneuver. Assuming that his auto was some 6½ feet wide, the plaintiff's testimony and the assumed ten-foot width of the parking lane would have plaintiff's vehicle in the parking lane at all times. Respondent points to this computation as showing that plaintiff was never in defendant's lane of traffic. However, a collision did occur and defendant placed its situs as his lane, so there must be some error, either in plaintiff's estimate of the distance he got from the curb or in the assumed width of the parking lane. Since we are dealing with estimates, plaintiff will not be held to those which are not consistent with what actually occurred. The error, in any event, may be in the assumed width of the parking lane. The transcript does not show the width of that lane.

A police officer who investigated the collision found the right front wheel of plaintiff's auto three feet from the curb. Since there was no evidence that the force of the collision knocked the vehicle sideways (Plaintiff and his wife testified that the vehicle was moved forward by the impact.), we find it reasonable to assume that, with the right side of the vehicle three feet from the curb, the left side would protrude into the traveled lane. Similarly, in view of plaintiff's testimony that he had maneuvered his auto to a position where the right rear wheel was a foot from the curb at the time of the collision, we reasonably can assume that, with the right side of the vehicle in such proximity to the curb, the left side would not protrude into the traveled lane. In any event, the rear portion of the auto, which was in that position, was not struck.

Examining in this light the evidence in support of plaintiff's assumption that the jury "could have found that plaintiff's automobile was in the lane in the path of defendant's oncoming automobile from the time plaintiff approached his parking location to the time of the collision," we are confronted with plaintiff's testimony as to his parking procedure on this occasion. Viewing this testimony in the light favorable to plaintiff, we find that he pulled into the 40-foot space, with his right front wheel one foot from the curb and his right rear wheel from two to three feet from the curb. Here is the plaintiff's testimony on cross-examination, when the subject was examined in considerable detail:

"Q * * * So when you started back, then you edged back so that you got your back wheels then back into the curb, is that right?

"A Yes.

   *     *     *     *     *     *

"Q * * * Well, while you were maneuvering back there did your front end extend out into the street any more?

"A Well, not immediately. After I would back up and just barely cut the front wheels to get the back ones lined up, in that position, to let my front in, at this point here in front of that driveway, just let my front end drop back against the curb.

"Q Well, during the course of that maneuver how far out did the front of your car get from the curb? A Not over two or three feet.

"Q Not over two or three feet? A I wouldn't say it was more than two or three feet.

"Q All right. So would that then make the left side of your car about two or three feet, then, east of the left edge of this car in front of you? A Well, it would

158

be—my front end of my car would have been extending—after I was west of the— or north of the alley, that was where the extension of the car was (indicating).

"Q All right. A There was no extension of the front end up here at all (indicating), when I backed up here there would be some extension of the car here as the front end was (indicating).

"Q That's what I mean, you got in there and you were about a foot from the curb and as you were backing out the front of your car moved out to a position about two or three feet from the curb and then you backed on—got your car back on in, is that right? A Possibly, yes.

"Q This impact did not occur while your car was out the two or three feet, did it, it occurred after you got back into the parking space, didn't it? A I wouldn't be able to say exactly when it occurred, at that moment, because it happened so sudden that I know I was parking and I knew that I was—felt that I was in reasonable safety whenever it occurred, that's the reason—

"Q (Interrupting) Weren't you just about completed with your parking when this accident happened?

"A Wasn't far from it.

"Q All right. In fact, didn't you say on direct examination that you were either stopped where you were going to park or just about stopped? A Yes, I could have been stopped, yes."

Keeping in mind that our view of the evidence favorable to the plaintiff is not to be distorted to supply the substantial evidence required to be adduced by plaintiff of the essential elements of his case, we conclude that plaintiff's testimony, the only source of evidence on the exact occurrence of the collision, is too vague and indefinite to support a finding of when a situation of immediate danger arose. Based upon plaintiff's testimony, the course

which he followed would not have required defendant to act as soon as plaintiff began his parking maneuver. Plaintiff's vehicle was partially in defendant's lane of travel at that time, but the course that plaintiff followed was designed to and did, in fact, remove plaintiff's auto from the course of defendant's travel, until such time as plaintiff altered the course of his travel by turning his wheels in such a manner as to cause the front end of his auto to protrude into the traveled lane. At that point, a situation of immediate danger may well have arisen. However, on this record we cannot determine when it would have arisen, and absent some evidence to support such determination, there can be no basis for a determination of defendant's ability after the danger arose to avoid the collision. Neither driver saw the other vehicle before the collision occurred. Just where defendant's vehicle might have been when plaintiff's movements placed him in the position which resulted in the collision can be only a matter of speculation and conjecture.

Although the cases frequently speak of "the zone of peril" being a matter for the jury (see Romandel v. Kansas City Public Service Co., Mo.Sup., 254 S.W.2d 585, 593 [19], Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 698 [7, 8]), 34 A.L.R.2d 972, there must be substantial evidence upon which the jury may base such determination. "A humanitarian case which leaves one or more of the essential elements to guesswork, speculation, or conjecture is not for the jury." White v. Burkeybile, Mo. Sup., 386 S.W.2d 418, 424 [8, 9].

The trial court properly held that no submissible humanitarian case was made by plaintiff.

The judgment is affirmed.

HOUSER, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER and STORCKMAN, JJ., and HOLMAN, Alt. J., concur.

HENLEY, P. J., not sitting.