James L. LABRIER, Respondent,

v.

ANHEUSER FORD, INC., a corporation, and Gerald W. Zeiser, Appellants.

No. 62177.

Supreme Court of Missouri,
En Banc.

Sept. 18, 1981.

Joseph H. Mueller, J. C. Jaeckel, St. Louis, for appellants.

Robert B. Hoemeke, St. Louis, for respondent.

BARDGETT, Judge.

Respondent brought an action against appellants alleging slander in count I and failure to issue a proper service letter[1] in count II. Judgment was entered on a jury verdict for respondent in the amount of $6,000 actual damages on count I and $10,000 actual and $32,000 punitive damages on count II. Appellants appealed only the judgment rendered on count II. The Missouri Court of Appeals, Eastern District, dismissed the appeal. It found that the notice of appeal was not timely filed in accordance with Rule 81.04 and, even if it had been, the transcript was filed more than ninety days thereafter which, in itself, would warrant dismissal of the appeal. This Court granted transfer and will consider the cause as if on original appeal. Mo.Const. art. V, § 10.

An appeal is a right conferred by statute. Rule 81.01. Therefore, it must be taken in accordance with that statute. Since Rule 81.04(a) (§ 512.050, RSMo 1978) requires that a notice of appeal be filed not more than ten days after the date of final judgment, a prerequisite to perfecting an appeal is the timely filing of the notice, except if within six months of the date of final judgment, the filing is permitted by request to and order of the appropriate appellate court. Rule 81.07(a). *See* § 512.060.1, RSMo 1978. Timely filing of the

---

1. The constitutionality of the service letter statute (§ 290.140, RSMo 1978) has recently been upheld by this Court, *Hanch v. K. F. C. Nat'l Management Corp.*, 615 S.W.2d 28 (Mo. banc 1981), and by the United States Court of Appeals for the Eighth Circuit in *Rimmer v. Colt Indus. Operating Corp.*, 656 F.2d 323, (8th Cir. 1981).

notice of appeal has been characterized as jurisdictional. *See Rahhal v. Mossie,* 577 S.W.2d 143, 145 (Mo.App.1979); *Kuhn v. Bunch,* 529 S.W.2d 200, 200–01 (Mo.App. 1975).

In the instant case, judgment was rendered on September 7, 1978. It became final when appellants' timely motion for new trial was overruled on December 15, 1978. Rule 81.05(a). Appellants had ten days from the date of final judgment to file the notice of appeal, which would have required filing no later than December 25. Rule 81.04(a). Since the 25th was a holiday, appellants had until the 26th to file. Rule 44.01(a). Discrepancies, however, exist in the record concerning whether the notice was filed on December 20, five days early, or December 27, one day late.

Respondent argues that an order nunc pro tunc should have been sought to correct the record and that no material outside the record (affidavits of appellants' attorney and circuit court personnel) should be allowed to impeach it or be considered by an appellate court. These contentions need not be addressed. Examination of the record alone, which contains a series of ministerial acts performed by the circuit court clerk's office, resolves the dispute of when the notice of appeal was filed.

▪ The check for the $20.00 docket fee was dated December 20, 1978. It was paid by the drawee bank on December 22. The judge's docket sheet, with entries made by a clerk, contained a December 20th minute entry which stated that the $20.00 docket fee had been deposited on December 20, 1978. The minute entry dated December 27, indicated that the docket fee was paid, jurisdictional statement and notice of appeal filed, and appeal bond set on that date. Yet, after this December 27th entry appeared the following parenthetical: "(Filed as of Dec. 20, 1978)". Nevertheless, the notice of appeal itself was stamped "Filed on December 27, 1978". This latter ministerial act, however, is not conclusive as to when the notice of appeal was filed. As this Court observed in *Ferguson v. Long,* 341 Mo. 182, 107 S.W.2d 7 (1937), " 'The

indorsement though required to be made by the clerk when he receives a paper, does not constitute the filing of the same. The filing is the actual delivery of the paper to the clerk without regard to any action that he may take thereon.' " *Id.* at 187, 107 S.W.2d at 10 (quoting *Grubbs v. Cones,* 57 Mo. 83, 84 (1874)). Thus,

> "[i]t may be said to be the general rule that the deposit or lodgment of the instrument for filing, in the proper office and its acceptance for that purpose by the proper officer constitutes a filing within the meaning of the law .... " A paper or document is said to be filed when it is delivered to the proper officer and lodged by him in his office.

*Byers v. Zuspann,* 257 S.W.2d 384, 387–88 (Mo.App.1953) (citations omitted) (quoting *Ferguson v. Long, supra,* 341 Mo. at 188, 107 S.W.2d at 11).

▪ Even though the notice of appeal was stamped as filed on December 27 and the same day an entry was made in the judge's docket sheet, the December 27th entry noted that the necessary documents were filed on December 20. That fact coupled with the evidence that the check for the docket fee was deposited on the 20th and paid by the bank on the 22d is convincing. On examination of each ministerial act, the record, while somewhat inconsistent, indicates that the notice of appeal was taken to the proper office, and delivered to and accepted by the proper officer on December 20, 1978. The Court finds that the notice of appeal was timely filed.

The filing of the notice of appeal on December 20, 1978, means that appellants had ninety days thereafter in which to file the transcript (Rule 81.18), unless they sought to file out of time pursuant to Rule 44.01(b) and old Rule 81.19. They did not. Thus, appellants were required to file the transcript on or before March 20, 1979. The transcript, however, was filed on March 27, 1979. It has been argued that this fact conclusively establishes that the appeal must be dismissed based on *Botkin v. Cain,* 587 S.W.2d 100 (Mo.App.1979). The reliance on *Botkin* is misplaced. That case

does not stand for the proposition that whenever a transcript is filed late an appellate court invariably will refuse to entertain the appeal. Rather, *Botkin* presented a situation where the transcript was filed 182 days *after* the notice of appeal and the appellate court chose not to reach the merits. *Cf. Eastman Kodak Stores, Inc. v. Summers*, 377 S.W.2d 476 (Mo.App.1964) (merits reached after transcript untimely filed); Rule 81.19 (appellate court, in its discretion, may enlarge period to file record).

█ Here, the transcript was filed only seven days late. Considering the problem of determining when the notice of appeal was filed, there was a minimum of delay. No prejudice has been shown to have resulted. In the exercise of this Court's discretion, the merits of the case will be addressed.

Considering the evidence most favorable to respondent, the record reveals that prior to April 1975, Labrier had been employed as a used-car salesman by Anheuser Ford for about seven years. On the 12th of that month he consulted a physician for a physical condition that had been affecting his job. In fact, in December 1974, his superior had talked with Labrier about his poor sales performance, which had not improved at the time he was dismissed. Due to the deteriorating physical condition marked by fatigue and insomnia, his doctor suggested that Labrier avoid work for at least six weeks.

On April 15, he spoke to the general sales manager, Mr. Zeiser, and told him what the doctor had recommended; Zeiser agreed. Labrier said that he would take either three weeks vacation or sick leave without pay, and would leave the decision to Zeiser. Zeiser suggested, however, that it would be better to discuss the matter with Labrier's immediate supervisor, Mr. Gilmour. Because Gilmour was not at work on the 15th, Labrier came back the next day and talked with him. Gilmour read the letter from the physician, but said that he would prefer Labrier not take any time off because the company was having a good month selling used cars. Labrier agreed and said that he could not afford to take off six weeks, but needed two or three weeks away from work. Consequently, Gilmour said that the time would be considered sick leave. Both Zeiser and Gilmour understood that the time off was to begin immediately. Labrier also told Gilmour that his demonstrator car had about 6,000 miles on it because company policy required that a demonstrator be returned after being driven about that distance. He told Gilmour that he would ask Zeiser whether he should take this demonstrator or another one with him. After speaking with Zeiser, Zeiser talked with the president of Anheuser Ford and informed Labrier. "They don't want you to take the car at all." Labrier asked, "Gerry, am I fired, am I being dismissed?" Zeiser replied, "No, you most certainly are not." Labrier had always taken a demonstrator with him on vacations and owned no family car, so he stated, "I'm going to call the Union and determine whether or not I'm entitled to take my car. If I'm not fired, I feel like I am." Zeiser said, "Well, okay, handle it that way." Labrier called the Union headquarters several times. After speaking with a representative, he believed he could take the demonstrator. He departed in it.

The following morning Labrier left St. Louis to begin his sick leave. That afternoon Zeiser and Gilmour went to Labrier's home and asked his wife where he was. Zeiser told her that it had not been decided whether Labrier was receiving a vacation or sick leave. Further, Zeiser said that Labrier had taken the demonstrator without permission and the company wanted the car back immediately or otherwise would have an all-points bulletin put out. Several days later when Labrier called home he was informed of the incident and immediately returned by plane, leaving the demonstrator in Memphis.

When he arrived home, he read a letter dated April 18, 1975, which was a copy of the letter sent to the Union about his dismissal. The letter stated that Labrier was dismissed because he was supposed to be at

work on Wednesday evening, April 16, 1975, and the following morning, but he did not appear for those shifts, nor did he appear for a sales meeting on the morning of April 18 or for his afternoon shift on that date. The letter also said that Labrier did not have permission to leave with his demonstrator. Labrier requested a service letter. The reply incorporated by reference the reasons for his discharge contained in the letter to the Union.

Labrier was reluctant to seek employment because of the letter. He called a friend in Poplar Bluff to ask about a job but abandoned that quest during the conversation with his friend. No prospective employer inquired whether he had a service letter.

■ Appellants argue that although respondent in his petition set out the reasons given for dismissal and alleged they were false, he did not aver the true reasons for discharge. Therefore, Labrier failed to state a claim on which relief could be granted. Appellants rely on *Tolliver v. Standard Oil Co.*, 431 S.W.2d 159 (Mo.1968). In that case, plaintiffs alleged in their petition that the service letter did not state the true reason for discharge. This Court concluded that the pleading failed to state *facts* showing that plaintiffs were entitled to relief and, therefore, did not meet the requirements of Rule 55.06. Subsequently, this Court noted, "In addition to stating and denying the reasons assigned by Standard, *good pleading required that the plaintiffs allege facts regarding what they deemed to be the real reason for their dismissal.* The petition is entirely silent on this latter vital subject." *Tolliver v. Standard Oil Co., supra*, at 162 (emphasis added). Appellants cite this language to argue that the true reasons for discharge must be pled in order to state a cause of action. Their assertion is faulty. Since this Court had already determined that the pleading was merely a conclusion, the cited language constitutes

dicta. Further, any inference from *Tolliver* that the only method of stating a cause of action in a service letter case is to aver the reasons given for discharge, deny them, *and* give the "facts regarding . . . the real reason for . . . discharge" is disapproved. Certainly, those allegations would state a cause of action and a plaintiff, if he could prove the true reasons for discharge, would present a stronger case than merely alleging and proving the employer did not state his true reasons for dismissal. *Terranova v. Western Auto*, 589 S.W.2d 362 (Mo.App. 1979). Still, additional averment of the correct reasons for discharge is not essential to state a claim on which relief can be granted under the service letter statute.

■ The statute provides that when an employee of a corporation is dismissed or quits, he is entitled to a service letter if he was employed for more than ninety days and makes a written request for it. The letter must set "forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stat[e] for what cause, if any, such employee has quit such service . . . ." § 290.140, RSMo 1978. Thus, if an employee meets the statutory prerequisites to be entitled to a service letter, he has a cause of action if the corporation fails to issue the letter or issues a letter not conforming to all the statutory requirements.

■ Here, Labrier met the prerequisites and averred:

That said service letter was false in that said letter stated that plaintiff left his place of employment without permission; plaintiff failed to show up for work when his attendance was expected; plaintiff was using a demonstrator automobile owned by defendant Anheuser Ford, Inc. without permission.

In essence, Labrier pleaded the reasons stated in the service letter and that they were false, *i. e.*, not the actual ones for which he was discharged.[2] This is all the

---

2. Of course, there is a distinction between the reasons themselves being true and the reasons given for discharge as being the actual ones for which the plaintiff was dismissed. The statute

only requires the latter. For instance, in *Terranova v. Western Auto, supra*, the reason given by the company for discharge of plaintiff was that she had stolen money. She alleged that

statute requires. To suggest that a plaintiff must additionally aver the true reasons for dismissal to state a cause of action is incorrect as it would require the employee to read the mind of the employer. Often an employee is in no position to know the true reasons in his employer's mind, he is just certain that the reasons given cannot be the ones for which he was discharged. As this Court recognized in *Potter v. Milbank Mfg. Co.*, 489 S.W.2d 197 (Mo.1972), "[P]laintiff has no burden of proving the true reason for his discharge; his burden is negative in character because such true reason is peculiarly within the knowledge of the employer, and burden of showing the truth of the asserted reason for discharge is on the employer." *Id.* at 203. *See also Newman v. Greater Kansas City Baptist & Community Hosp. Ass'n*, 604 S.W.2d 619, 621–22 (Mo. App.1980).

From the evidence, the jury could have found that Labrier's absence from work and a sales meeting were not actual reasons for discharge because both of Labrier's supervisors knew he needed time off from work, Gilmour agreed to give him the time, and both understood that the leave would begin immediately; therefore, appellants could not possibly have expected Labrier to appear at the stated times. Further, even though Zeiser said Anheuser Ford did not want Labrier to take the demonstrator with him, the jury could have found that Labrier was not fired at the time, believed he was entitled to the demonstrator, Zeiser agreed to abide by the Union's determination whether Labrier should keep the demonstrator, and that Labrier after speaking with a Union representative believed he could take the demonstrator. Thus, the company, aware of the circumstances and making no attempt, after Labrier was fired, to recover the car even though approximately three weeks passed before it was returned, may not have given a true reason for discharge when stating that Labrier had taken the car without permission. Therefore, respondent was entitled to at least nominal damages. Appellants contend, however, that even if a cause of action was stated, there was no evidence to sustain the award of $10,000 actual damages.

■ The elements of actual damages which a plaintiff must prove in a service letter case where the actual damages sought are premised on interference in obtaining employment by reason of a service letter statute violation were set out recently by this Court. These elements include

(1) that on or about an approximate date the plaintiff was either refused employment or hindered in obtaining such employment; (2) that the refusal or hinderance was caused by the absence or inadequacy of the service letter; (3) that the position the plaintiff had difficulty obtaining was actually open; and (4) the salary rate of that position.

*Herberholt v. dePaul Community Health Center*, No. 62628, slip op. at 8 (Mo. banc Sept. 8, 1981) (citing *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688, 691–92 (Mo.App.1977)).

■ Labrier stated that he thought his services as a salesman were unmarketable in the auto industry because of the service letter and, therefore, considered himself hindered in seeking employment. The record, however, is devoid of any evidence that any potential employer held the service letter against him, that he sought any position that was actually open, or the salary rate of that position. Thus, Labrier failed to prove actual damages, but is entitled to nominal damages in the amount of $1.00.

Finally, appellants contend that there is no evidence to support an award of punitive

she, in fact, had not stolen money. But the company apparently believed she had and because of that belief fired her. The court noted that "[t]he issue before the jury was not whether ... [plaintiff] had stolen any money but was whether the company had stated the true cause of her dismissal in its letter." *Id.* at 363. *See also Newman v. Greater Kansas City Baptist &*

*Community Hosp. Ass'n*, 604 S.W.2d 619, 622–23 (Mo.App.1980). Therefore, even though the reasons stated may themselves be incorrect, they still may be the *real* reasons the employer discharged its employee. In such a case, an employer satisfies its obligations under the statute when it states the truth as to discharge reasons, even though they may be incorrect.

damages and the $32,000 granted is excessive.

■ It is well settled that if the evidence sustains a showing of either actual or legal malice, punitive damages are recoverable. *Rotermund v. Basic Materials Co.*, supra, at 691; *Schmidt v. Central Hardware Co.*, 516 S.W.2d 556, 560 (Mo.App.1974). The standard for legal malice is that there be a wrongful act intentionally committed and without just cause or excuse; whereas, actual malice exists when one with a sedate, deliberate mind and formed design injures another. *Id.*

■ The evidence supports a finding of legal malice. The jury could have found that the appellants knowing Labrier would not be coming to work for several weeks and that the Union would decide if he was entitled to the demonstrator still gave these as the reasons for his discharge. Further, it cannot be said that the amount of punitive damages is so large as to be excessive.

■ There is no fixed relation between the amount of actual (nominal) damages and the amount of punitive damages awarded. *Id.* Once the trial court decides as a matter of law that the issue of punitive damages should go to the jury, then the matter is purely and peculiarly one for the jury's discretion and is not to be reversed except on a clear showing of abuse of discretion. *Hoene v. Associated Dry Goods Ass'n*, 487 S.W.2d 479, 486 (Mo.1972); *Beggs v. Universal C. I. T. Credit Corp.*, 409 S.W.2d 719, 724 (Mo.1966). In *Hoene* this Court affirmed an award of $20,000 punitive damages with $500 actual damages. In *Potter v. Milbank Mfg. Co.*, supra, this Court upheld an award of $20,000 punitive damages compared with $1.00 nominal damages. More recently, in *Wuerderman v. J. O. Lively Constr. Co.*, 602 S.W.2d 215 (Mo. App.1980), the court of appeals allowed $27,500 punitive damages and $1.00 nominal damages. Further, the court in *Holcroft v. Missouri-Kansas-Texas R. R.*, 607 S.W.2d 158 (Mo.App.1980), permitted an award of $75,000 punitive damages with $1.00 nominal damages. In the instant case, the award of $32,000 punitive damages cannot be said to be totally without any legal basis or have been caused by improper motives or a clear absence of honest exercise of judgment on the part of the jury.

Judgment is affirmed as to the award of punitive damages and reversed with regard to the award of actual damages with instructions to the trial court to set aside its judgment for $10,000 actual damages and to enter an award of $1.00 nominal damages.

SEILER, MORGAN and HIGGINS, JJ., concur.

DONNELLY, C. J., dissents in separate dissenting opinion filed.

RENDLEN and WELLIVER, JJ., dissent and concur in separate dissenting opinion of DONNELLY, C. J.

DONNELLY, Chief Justice, dissenting.

If I agreed with the majority that this appeal should *not* be dismissed, I would dissent from that part of the principal opinion upholding the award of punitive damages against appellants for the same reasons stated in my dissent in *Hanch v. K. F. C. National Management Corp.*, 615 S.W.2d 28, 37 (Mo. banc 1981).

Since in my view, however, the appeal should be dismissed, I would retransfer the case to the Missouri Court of Appeals, Eastern District, for the adoption of that court's opinion of January 29, 1980, which, in substantial part and without quotation marks, follows:

Judgment was rendered in this case on September 7, 1978. The judgment became final for purposes of appeal on December 15, 1978, when the court overruled defendants' timely-filed motion for new trial. Rule 81.05(a). Defendants therefore had until December 26 to file a notice of appeal, Rule 81.04, inasmuch as the 25th was, of course, a holiday. Rule 44.01(a). Defendants' notice of appeal, however, though dated by defendants on December 20, bears the following stamp from the office of the circuit court: "Filed Dec 27 1978 Joseph P.

Roddy, Clerk." A "Memorandum for Clerk" signed by defendants' attorney bears the identical stamp.

Defendants insist that the notice was in fact received by the clerk on December 20 and admit that they are simply unable to explain the delay in the dating of the document. In support of their argument, defendants have submitted to this court a supplemental transcript, which includes a copy of the circuit court's minute entry with the added notation "*Filed* as of December 20, 1978"; and affidavits from defense counsel and an employee of the circuit court's office to the effect that the notice of appeal was received on December 20.

However, I agree with the holding in the recent case of *Rahhal v. Mossie*, 577 S.W.2d 143 (Mo.App.1979), that the record may not be impeached by the use of such devices. In that case the court, in a situation identical to that of the instant case, refused to consider similar affidavits and held the appellate court bound by the record as it came before that court. See also the cases cited therein. This case particularly underscores the problems to which this court would open itself by allowing proof of vital facts to be made by such extraneous means: the clerk attested by affidavit some seven months after the filing that she had received a particular document on a particular day. This court should not become a judge of the credibility of affiants and an arbiter of the validity of the record; the record must speak through itself. As noted in *Rahhal*, supra, 145, defendants could have applied for an order nunc pro tunc to correct the record if it was in error. They elected not to do so. I would therefore accept December 27 as the filing date and would hold defendants' notice of appeal was not in compliance with Rule 81.04.

In addition, I note that the transcript was filed in the Court of Appeals on March 27, 1979, ninety-seven days after the date on which defendants claim that the notice of appeal was filed. However, the record contains no motion from defendants nor order of the trial court authorizing the filing of the transcript more than ninety days after the filing of the notice of appeal, as required by Rules 81.18 and 81.19. Thus, even if we accepted the claims of defendants-appellants concerning the date of the filing of the notice of appeal, the filing of the transcript was untimely which, in itself, would warrant dismissal of the appeal. Rule 81.04. *Cf. Botkin v. Cain*, 587 S.W.2d 100 (Mo.App.1979).

I respectfully dissent.