James J. DWYER, Jr., Appellant,

v.

BUSCH PROPERTIES, INC., a corporation, Respondent.

No. 62099.

Supreme Court of Missouri,
En Banc.

Dec. 14, 1981.

Alan G. Kimbrell, St. Louis, for appellant.

Thomas C. Walsh & G. William Weier, St. Louis, for respondent.

MORGAN, Judge.

Appellant initiated this action for actual and punitive damages against respondent, his former employer, for its alleged noncompliance with § 290.140, RSMo, commonly referred to as the "service letter" statute and which provides, in part, that:

> Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and *truly stating for what cause, if any, such employee has quit such service*; .... (Emphasis added.)

Appellant suffered a directed verdict at the close of his evidence; and, the Eastern District of the Court of Appeals affirmed the judgment entered thereon. Thereafter, we sustained appellant's application to transfer and now consider the cause as if on original appeal.

Respondent, Busch Properties, Inc., is a wholly owned subsidiary of Anheuser-Busch, Inc., and handled all nonbrewery related real estate transactions on behalf of the parent company. In 1971, appellant was employed by respondent as an assistant to its president, one Walter E. Diggs, Jr. By reason of his position, appellant was involved intimately with the planning and development of large projects initiated by Busch Properties, Inc. Under Diggs' sponsorship, he soon rose to the position of Director of Commercial Properties, the position from which he eventually was dis-

charged. His responsibilities required that the major portion of his energies be directed toward the construction of a project called "Kingsmill" located just south of Williamsburg, Virginia, which was to be a multi-faceted commercial and residential complex. He was instrumental in gaining approval of all plans from the respondent's board of directors and a commitment from the board of the parent company, Anheuser-Busch, Inc., for a loan of $11,340,000 to complete the project. Following such approval, appellant was recommended for and received a salary increase at the request of Diggs.

The events giving rise to this action began in October of 1974. On the third or fourth thereof, Diggs informed appellant that he had been summoned to the farm of August Busch III, chairman of the board of Anheuser-Busch, for a conference and it was now necessary for appellant to prepare a summary of all Busch properties with which he was involved. This was done. On the following Saturday, appellant received a telephone call from Diggs requesting he prepare a statement of what he could do if he were removed from the Kingsmill project. Compliance therewith followed. A few days later, Diggs came to appellant's office and offered him the choice of resigning or being fired. When the latter requested some explanation, the only evidence of Diggs' response which was admitted at trial was that it had not been his choice. Appellant finished the week and left with a very favorable letter of recommendation from Diggs. With a letterhead of "Busch Properties, Inc.," it read:

Jim Dwyer has been employed by Busch Properties, Inc. for roughly three years, first as my Assistant, and subsequently as Director of Commercial Properties.

In both capacities Jim discharged his responsibilities with a high degree of proficiency. He is intelligent, articulate, thorough and hard working, and dedicated to quality performance.

While he has gained substantial experience in many facets of the real estate industry and would be a valuable employee in many capacities in that industry, his skills are of such quality and breadth to enable him to make significant contributions in many other fields as well.

I wholeheartedly recommend him as an employee and sincerely regret his loss to my organization.

(signed)
·Walter E. Diggs, Jr., President

Thereafter, appellant requested a service letter containing the "true reason" for his dismissal as required by § 290.140. The response, again signed by Diggs as President, detailed appellant's work period and past duties and concluded with the following paragraph:

I can best state the cause for your dismissal by saying that top Corporate Management had lost confidence in your ability to discharge the substantial responsibilities placed upon you, especially those relating to the Resort Hotel/Conference Center.

Further communications revealed that Diggs had not lost confidence in appellant, but that he was not "Top Corporate Management" as that term referred to August Busch III. In fact, Diggs had said: "You are my most valuable employee."

■ First, we consider respondent-employer's effort to have the appeal dismissed on the ground of late filing; and, we agree with the disposition of that issue by the Eastern District as follows:

The motion for a new trial was denied June 27, 1978. Plaintiff's notice of appeal was originally stamped by the clerk: "filed July 17, 1978." Plaintiff contends that he filed the notice on June 30, 1978. The clerk also stamped "Received by Circuit Clerk June 30, 1978" on the notice. After plaintiff submitted a motion to correct the record and an affidavit in support thereof, the trial court entered a nunc pro tunc order changing the filing date from July 17 to June 30.

Defendant argues that the court's official records cannot be impeached by parol evidence alone and that plaintiff failed to offer competent evidence to prove the records incorrect.

When a change in the record regarding a ministerial act of a clerk is sought, parol evidence may be received, and if the evidence satisfies the court that a paper was actually filed at a time other than that shown by the record, then the court may make an entry nunc pro tunc to change the record to show the true date of the filing. *Dorrance v. Dorrance*, 242 Mo. 625, 148 S.W. 94, 96[1] (Banc 1912); *Estate of Fisk*, 527 [537] S.W.2d 828, 830[2] (Mo.App.1976). Plaintiff's affidavit and attached exhibits obviously convinced the trial court that the filing date should be changed. The finding will not be disturbed.

A similar result was reached recently by this Court in *James L. LaBrier v. Anheuser Ford, Inc.*, a corporation and *Gerald W. Zeiser*, 621 S.W.2d 51 (Mo. banc 1981).

■ Secondly, from the record made and arguments submitted there is a possibility that the directed verdict was predicated, at least in part, upon respondent-employer's allegation therefor that appellant failed to prove by substantial evidence the true reason for his discharge. In support thereof, respondent cites *Tolliver v. Standard Oil Company*, 431 S.W.2d 159, 162 (Mo.1968) and *Stebbins v. Mart Drug Company*, 344 S.W.2d 302 (Mo.App.1961). To the extent the two cases cannot factually be distinguished, they do not reflect the present state of the law on the questioned issue, which was articulated in *Potter v. Milbank Manufacturing Company*, 489 S.W.2d 197, 203 (Mo.1972), as follows:

Plaintiff's case on failure of the service letter to correctly state the true cause of his termination ... was submitted, as required, by MAI No. 23.08. Such instruction does not require an affirmative finding of the true reason for discharge. Accordingly, plaintiff has no burden of proving the true reason for his discharge; his burden is negative in character because such true reason is peculiarly within the knowledge of the employer, and burden of showing the truth of the asserted reason for discharge is on the employer. *Kenton v. Massman Construction Co.*, Mo., 164 S.W.2d 349, 352[5]; MAI 23.08, Committee's Comment, p. 226 [Third Edition (1981), p. 320].

Those interested may also see the *LaBrier* case, *supra*, for a consistent holding on the same issue.

Thirdly, we note appellant's argument that "loss of confidence" is not a "reason" at all; based upon his reasoning that: "Such a vague generality, which leaves the reader free to imagine all sorts of sins which might have caused the 'loss of confidence,' is really worse than a specific charge of misconduct, which can, at least, be denied." Reference is made to "service unsatisfactory," considered in *Lyons v. St. Joseph Belt Ry.*, 232 Mo.App. 575, 84 S.W.2d 933 (1935), and "not suited to work" in *Bourne v. Pratt & Whitney Aircraft Corp.*, 207 S.W.2d 533 (Mo.App.1948).

In contrast, respondent submits that "loss of confidence" is an adequate reason for discharge and particularly so " ... in view of the major decisions to be made at the executive level and the financial consequences of such an employee's actions."

It would appear that either argument might have some merit, depending upon the facts developed in a particular case. However, we believe the same to be premature upon the record before us as the "initial" issue, presumably to have been resolved by the jury, was whether or not the reason given for discharge was in fact the *true* reason. If not, further inquiry would be inappropriate.

Finally, appellant contends that evidence offered by him was sufficient to create a jury issue as to whether "loss of confidence" was the true reason for his discharge; and, for that reason, the trial court erred in directing a verdict against him. Briefly stated, such evidence revealed that:

1. The President of the Company, to whom plaintiff reported directly, rated plaintiff's performance from 'good' to 'excellent' throughout his tenure with Respondent.

2. Plaintiff was recommended for and received frequent salary increases.

3. Plaintiff's personnel file was devoid of any criticism which could demonstrate or lead to a 'loss of confidence in his abilities'.

4. Although the letter claims that the 'loss of confidence' related particularly to the 'Resort Hotel/Conference Center,' plaintiff never received any criticism of his performance with regard to this project.

5. Even after Dwyer was fired, Respondent's president wrote a letter highly commendatory of his abilities, which stated that plaintiff had 'discharged his responsibilities with a high degree of proficiency'.

6. On the very day he fired him, Respondent's president told plaintiff that he was his 'most valuable employee'.

7. At the time plaintiff was fired, Respondent's president, who later wrote the service letter, 'was not able to give' plaintiff any explanation for his firing.

8. August Busch, the 'top corporate management' referred to in the service letter, admitted that, at the time of plaintiff's discharge, 'the corporation was taking every possible step to reduce its overhead'; and, that '... the total corporation was looking for areas of economy, reduced overhead costs, reduced staff costs, as a total corporation.'

9. Plaintiff's position as Director of Commercial Properties for Respondent was never filled.

10. August Busch testified incorrectly that no decision had been made as to the ownership and management of the resort-hotel conference center.

11. August Busch testified incorrectly that 'the money to build the hotel' had never been 'approved by the Board'.

12. Despite the fact that August Busch had repeatedly approved the development of the resort hotel/conference center only a few months before Dwyer was fired, the project has never been built.

■ There can be no argument but that directing a verdict at the close of a plaintiff's evidence is a drastic action as shown by the multitude of cases cited in Mo.Dig., Appeal and Error, Key No. 927(7). It should be done only when all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against plaintiff's case that there is no room for reasonable minds to differ. *Wehrkamp v. Watkins Motor Lines, Inc.*, 436 S.W.2d 698 (Mo.1969).

■ Without belaboring the facts, it would not be difficult to conclude from the evidence presented that it would have sustained a finding that the true reason for appellant's dismissal was (1) a desire to cut overhead, (2) planned abandonment of the project or (3) no further need for appellant's services. Resolution thereof should have been by the jury and directing otherwise was erroneous.

The judgment is reversed and the cause is remanded for further proceedings, if any.

SEILER, HIGGINS and BARDGETT, JJ., concur.

DONNELLY, C. J., dissents in separate dissenting opinion filed.

RENDLEN and WELLIVER, JJ., dissent and concur in separate dissenting opinion of DONNELLY, C. J.

DONNELLY, Chief Justice, dissenting.

I dissent for the reasons expressed in my dissenting opinion in *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617 (Mo. banc 1981).