James R. STARK, Plaintiff-Appellant,

v.

AMERICAN BAKERIES COMPANY, a corporation, Defendant-Respondent.

No. 63581.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

Rehearing Denied March 29, 1983.

Timothy H. Bosler, Liberty, John H. Norton, Kansas City, for plaintiff-appellant.

Lloyd A. Hamrick, A. Warren Francis, Jeffrey O'Connor, Kansas City, for defendant-respondent.

RENDLEN, Chief Justice.

Plaintiff initiated this action against his former employer for alleged noncompliance with the service letter statute, § 290.140, RSMo 1969. The jury returned a plaintiff's verdict for $1.00 actual and $50,000 punitive damages. After entry of judgment in ac-

cordance with the verdict, the court, on defendant's motion, set aside its order and entered judgment for defendant notwithstanding the verdict or alternatively granted defendant a new trial based on instructional error and a finding the verdict was against the weight of the credible evidence. Plaintiff sought review in the Court of Appeals, Western District, where the judgment of the trial court was affirmed and thereafter, on plaintiff's motion, the cause was transferred and is determined here as though on original appeal.

Plaintiff maintains the trial court erred by entering judgment for defendant N.O.V. and abused its discretion by the alternative grant of new trial. We affirm the judgment N.O.V. denying punitive damages, reverse as to the award of nominal damages and vacate the order alternatively granting defendant a new trial.[1]

■ When reviewing a judgment for defendant notwithstanding the verdict, the evidence is taken in the light most favorable to the plaintiff and he is given the benefit of reasonable inferences to be drawn therefrom. *Herberholt v. dePaul Community Health Center,* 625 S.W.2d 617, 622 (Mo. banc 1981); *Farnham v. Boone,* 431 S.W.2d 154, 156 (Mo.1968). Though defendant's evidence unfavorable to plaintiff is disregarded, *Bayne v. Jenkins,* 593 S.W.2d 519, 521 (Mo. banc 1980), the party with the burden of proof may be bound by uncontradicted facts elicited from his own witnesses on direct examination. *Silberstein v. Berwald,* 460 S.W.2d 707, 710 (Mo. 1970); *Taylor v. Riddle,* 384 S.W.2d 569, 573–74 (Mo.1964).[2] Application of these principles yields the following facts.

In 1953, plaintiff was hired by defendant as a route salesman in Kansas City, Missouri to produce sales volume from assigned accounts and solicit accounts. Working in that capacity until 1957, plaintiff resigned for a stint in the insurance business but was reemployed by defendant in 1958 as a route salesman. In 1962, plaintiff was promoted to route supervisor with responsibility for six to nine salesmen; in 1964, he was promoted to merchandiser and four years later was advanced to sales manager, responsible for sales in the city of Kansas City and later the Kansas City "area." In 1972, plaintiff was moved laterally to the position of marketing director. The reason for this job move was noted on defendant's personnel records as "Change in Sales Department Personnel," and Charles Johnson was brought in to replace plaintiff as sales manager. As marketing director, 95% of plaintiff's assignment was to hold and cultivate the Associated Grocers account, one of defendant's largest, if not its largest account in the Kansas City area. Associated Grocers was a large group associated for the benefit of volume purchasing, and a number of defendant's employees in addition to plaintiff worked the account. Each month during 1975, the dollar amount of defendant's sales to Associated increased as against the same month in 1974. Though plaintiff played some part in this increase, it was also attributable to the efforts of other employees, inflationary pressures and an "all out" sales campaign conducted by defendant. While marketing director, plaintiff worked long hours and at times (as did others) holidays and Sundays. Plaintiff was punctual, seldom took all his vacation, made a good appearance, and was never reprimanded at a monthly sales meeting or told his work was unsatisfactory. During plaintiff's employment, the time is uncertain, he helped initiate the "Drop Program," a system of direct delivery to grocers, and in January, 1976, helped institute a similar program in Detroit, Michigan. Plaintiff's annual salary, which was $10,000 in 1968, was increased in $1,000 yearly increments to $17,000 in 1975. The reason for

---

1. Defendant raises a number of constitutional challenges to § 290.140, RSMo 1969, all of which were determined adversely in *Hanch v. K.F.C. National Management Corp.,* 615 S.W.2d 28, 33–37 (Mo. banc 1981), and require no further discussion.

2. Defendant's plant manager, Charles Johnson, was called by plaintiff to establish part of his case. Facts elicited from Johnson on direct examination that were not contradicted by evidence or inference are accepted here as true.

plaintiff's 1973 raise was noted on his personnel records as "Merits increase."

While he was marketing director, plaintiff reported to his replacement, Charles Johnson, as to some activities and to Ken Moreland, the plant manager, as to others. In mid-1975 Johnson was transferred to Dallas, but retained responsibility for sales at defendant's Kansas City plant. Two or three weeks before Johnson left for Dallas, plaintiff was given a $1,000 raise by Ken Moreland, the reason recorded as, "Merit increase." In early March, 1976, Johnson was promoted to replace Ken Moreland as plant manager and returned to Kansas City. Eight days later, he asked plaintiff to resign "for economical [sic] reasons." When plaintiff refused, Johnson said he'd have to let him go. Plaintiff asked "Why?" and Johnson replied, "Because your work is unsatisfactory." A lengthy discussion ensued during which Johnson offered to help plaintiff find other employment. Thereafter Johnson directed preparation of a termination notice which read substantially as follows:

TERMINATION OR LEAVE OF ABSENCE NOTICE

NAME STARK JAMES ROBERT POSITION: MARKET DIRECTOR

QUIT _____ DISCHARGED _____ LAID OFF x OTHER _____

EXPLANATION
_____ Work not satisfactory _____

| | Excellent | Good | Fair | Poor |
| --- | --- | --- | --- | --- |
| Quality of Work | | | X | |
| Quantity of Work | | | X | |
| Relations with other workers | | X | | |
| Cooperation | | X | | |
| Attendance and Punctuality | | X | | |

Is He Honest: Yes

Would You Rehire Him? No Why: Above reason.

/s/ Charles Johnson
Plant Manager

A week after his discharge plaintiff was hired by Foremost Dairies as a free-lance salesman. Three months later, he wrote to defendant requesting the challenged service letter. After consulting a company attorney, Johnson responded on behalf of the defendant:

June 30, 1976

Dear Mr. Stark:

In answer to your letter of June 10, 1976, our records indicate your date of employment with American Bakeries Company began July 21, 1958 and terminated March 13, 1976.

The nature of your duties was sales work, holding various jobs in our Sales Department. For approximately the last four years of employment, you were Marketing Director responsible for Associated Grocer Stores.

You were terminated on March 13, 1976 because your work was unsatisfactory. Sincerely,

AMERICAN BAKERIES COMPANY
/s/ Charles Johnson
Manager

In deposition given January 13, 1977, plaintiff said he knew no reason for his discharge other than unsatisfactory work. At trial, testifying somewhat differently, he stated that since the time of deposition he had developed the feeling he was discharged by Johnson because of professional jealousy. The only evidence supporting this conclusion was that Johnson replaced plaintiff as sales manager and that until plaintiff became marketing director, the careers of both men followed similar paths.

NOMINAL DAMAGES [3]

█ Plaintiff contends that even if true, defendant's statement, "[y]ou were termi-

3. Approximately a week after his discharge, plaintiff was employed by another company

nated on March 13, 1976 because your work was unsatisfactory," is too vague to sufficiently state a "cause" for termination under § 290.140, RSMo 1969.[4] We agree.

 The purpose of § 290.140, RSMo 1969, is to deter corporate employers from destroying or severely impairing the employability of former employees by furnishing false or misleading information as to their service or false reasons for their discharge. *See Cheek v. Prudential Insurance Co.,* 192 S.W. 387, 389 (Mo.1916). The target of the statute is corporate blacklisting, i.e. severe and unjustified career damage by former corporate employers. Armed with accurate information about their service and the true reasons for discharge, it is hoped that employees can counter false information disseminated by former corporate employers or use truly stated reasons to sue for wrongful discharge in appropriate cases. The short statement "unsatisfactory work" as the "cause" for discharge falls short of achieving these goals. Even if plaintiff was discharged because his work was unsatisfactory in some respect, the service letter citing "unsatisfactory work" as the reason for his discharge would not enable him to counter false statements that his work was unsatisfactory in other, possibly vital, respects. Because the reason "your work was unsatisfactory" would not enable plaintiff to meet and rebut severely impairing "facts" stated by his former corporate employer, we conclude it is too vague to constitute a "cause" for discharge under § 290.140, RSMo 1969, and defendant is liable for the $1.00 nominal damages awarded by the jury. However, as we shall

now discuss, there was insufficient evidence of actual or legal malice on the part of the defendant to justify an award of punitive damages.

## PUNITIVE DAMAGES

 The test to be applied in determining if malice existed as a basis for an award of punitive damages is whether the defendant did a wrongful act intentionally without just cause or excuse. *Pollock v. Brown,* 569 S.W.2d 724, 733 (Mo. banc 1978); *Beggs v. Universal C.I.T. Credit Corp.,* 409 S.W.2d 719, 722 (Mo.1966). To be assessed punitive damages, defendant must not only have intended to perform the act which is ascertained to be wrongful but must have known it was wrongful when he did it. *Pollock v. Brown,* 569 S.W.2d at 733; *Beggs v. Universal C.I.T. Credit Corp.,* 409 S.W.2d at 722.

 Although we have determined the reason for discharge given in defendant's service letter was too vague to satisfy the requirements of § 290.140, RSMo 1969, there was insufficient evidence of malice in this violation to justify an award of punitive damages. When Charles Johnson received plaintiff's request for a service letter, he consulted defendant's legal counsel in Chicago. A company attorney told Johnson the letter must state the true reason for plaintiff's discharge. After drafting the letter, Johnson sent it, along with plaintiff's personnel records, to the attorney for approval, and when so approved, the letter was forwarded by Johnson to plaintiff. In

and makes no claim defendant's service letter occasioned actual damages.

4. Section 290.140, RSMo 1969, provided in pertinent part:
Whenever any employee of any corporation doing business in this state shall be discharged ... it shall be the duty of the ... manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such ... manager, setting forth the nature and character of service rendered by such employee to such corporation

and the duration thereof, and truly stating for what cause, if any, such employee has quit such service;....

Violation of this statute by a corporation gives rise to a private cause of action, *Cheek v. Prudential Insurance Co. of America,* 192 S.W. 387, 390 (Mo.1916), and, in an appropriate case, to punitive damages. *Cheek v. Prudential Insurance Co. of America,* 223 S.W. 754, 756 (Mo.App.1920). Although § 290.140, RSMo 1969, is applicable to this case, it should be noted that violation of § 290.140 as amended in 1982 will give rise to punitive damages in fewer instances.

no previous case has a service letter been held defective solely because the reason given for discharge was overly broad, and there is no other evidence from which it can reasonably be inferred that Johnson or defendant's counsel knew it was wrong to set forth a true but overly general reason for plaintiff's discharge. Because Johnson and the corporate counsel are the only agents upon whose actions defendant's liability for punitive damages may rest, there was insufficient evidence of malice in this violation to justify a finding of malice and an award of punitive damages.

 Plaintiff also contends there was substantial evidence that defendant's service letter did not *truly* state the cause for his discharge and that the intentional false statement by defendant is sufficient to sustain the jury's finding of a malicious statutory violation and its award of punitive damages. Our review, however, discloses no substantial evidence or reasonable inference that defendant's service letter falsely stated the cause of plaintiff's termination.[5]

In its service letter to plaintiff, defendant stated "[y]ou were terminated on March 13, 1976 because your work was unsatisfactory ... /s/ Charles Johnson, Manager." Because defendant is a corporation, its liability must arise from the acts of an agent. It was undisputed that Charles Johnson discharged plaintiff, and there was no evidence Johnson was ordered to discharge him or that any other agent of defendant participated in Johnson's decision to let plaintiff go. Therefore, to establish that defendant's service letter did not truly state the reason for his discharge, plaintiff must cite substantial evidence or reasonable inference that he was not discharged because his work was unsatisfactory to Charles Johnson.[6] Though there is evidence from which it might be inferred that plaintiff's work was in many regards satisfactory, we fail to find substantial evidence of circumstances indicating he was not discharged because Charles Johnson believed his work was unsuitable for the position he held.[7]

 Evidence of plaintiff's work prior to October, 1972 is of little probative worth because plaintiff did not meet Johnson until that time. Punctuality, good appearance and long hours, while desirable qualities in an employee, are not sufficient to support

5. To avert a directed verdict, the plaintiff who seeks to establish a defendant violated § 290.-140 by failing to state the true reason for his discharge need not prove the true reason for his discharge but must cite substantial evidence that the stated reason is not the true reason for his discharge. *Dwyer v. Busch Properties, Inc.,* 624 S.W.2d 848, 851 (Mo. banc 1981); *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 56–57 (Mo. banc 1981); *Potter v. Milbank Manufacturing Co.,* 489 S.W.2d 197, 203 (Mo.1972). Statements in *Dwyer v. Busch Properties, Inc.,* 624 S.W.2d at 851, *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d at 57 and *Potter v. Milbank Manufacturing Co.,* 489 S.W.2d at 203 that the defendant in service letter cases has the burden of showing the truth of the asserted reason for discharge is not to be taken as imposing a burden of *proof* on the defendant. *In accord, Newman v. Greater Kansas City Baptist and Community Hospital Association,* 604 S.W.2d 619, 622 (Mo.App. 1980).

6. While there was testimony of pressure from defendant's general office in Chicago to "get rid of plaintiff," such evidence seems more unfavorable than favorable to plaintiff and is, therefore, not considered.

7. In *Newman v. Greater Kansas City Baptist and Community Hospital Association,* 604 S.W.2d 619 (Mo.App.1980), the Western District Court of Appeals correctly emphasized the subjective nature of plaintiff's burden in service letter cases. In *Newman,* the service letter gave as the cause of discharge: "Theft of personal property on hospital premises." At trial, plaintiff produced evidence that she was not guilty of theft. Reversing judgment for plaintiff, the court opined, "... the evidence that [plaintiff] did not steal proves merely that the statement that she did steal was false, not that the reason stated for discharge was false. In fact, the evidence allows *no* inference other than that she was terminated because ... the hospital believed she stole. There was no proof that the reason given was a foil for a true but undisclosed cause. The want of such evidence amounted to a lapse to prove a submissible cause of action under § 290.140." *Id.* at 622. *See also Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d at 56–57 n. 2, *Williams v. Kansas City Transit, Inc.,* 339 S.W.2d 792, 799 (Mo. 1960), and *Terranova v. Western Auto,* 589 S.W.2d 362, 363 (Mo.App.1979).

an inference that Johnson was satisfied with the quality or quantity of plaintiff's work. There was no evidence from which it might be inferred that plaintiff's contribution to the increase in Associated Grocers was "satisfactory." Neither was there evidence that plaintiff's participation in formulation of the "Drop Program" amounted to more than legwork with guidance from others, or that Johnson approved any raise given to plaintiff or the notation "Merit[s] increase" on plaintiff's salary records. There was no evidence linking Johnson to plaintiff's participation in the Detroit Drop Program, and to conclude, as plaintiff urges, that Johnson would have marked "poor," rather than "fair" after "quality" and "quantity of work" on plaintiff's termination notice if he considered plaintiff's work unsatisfactory requires speculation rather than reasonable inference. Johnson's request that plaintiff resign for economic reasons is as consistent with an inference that Johnson believed plaintiff was paid too much for the work he was performing as with an inference of corporate financial plight. Evidence of successive jobs and similar career paths constitutes less than substantial evidence of professional jealousy. In the end, the question is whether Johnson's failure to reprimand plaintiff or indicate his work was unsatisfactory in advance of plaintiff's discharge is sufficient, standing alone, to constitute substantial evidence that unsatisfactory work was not the reason for his discharge. We conclude it is not. There was no evidence that prior to Johnson's promotion to plant manager it was his position to reprimand plaintiff and, although warnings and opportunities to improve may be desirable before discharging an employee, we cannot say the practice is so widespread that the absence of reprimand by a supervisor raises a reasonable inference he is satisfied with an employee's work. When called by plaintiff, Charles Johnson testified that by "unsatisfactory," he meant plaintiff was not industrious, his sales were not gaining as they should and that, in his opinion, plaintiff could not formulate programs for increased sales or communicate to top people what

they needed. Johnson stated that plaintiff could wash bread racks and take managers to lunch, but, in Johnson's words, the company did not "need a high-salaried person that all he knew how to do was, in my opinion, wash bread racks and this type of thing." To handle a large account like Associated Grocers, Johnson said, he felt the company needed someone who could "function in a higher capacity," and plaintiff was not "functioning in that higher capacity."

To support a finding essential to recovery by circumstantial evidence, the shown circumstances must be such that the facts necessary to support the finding may be inferred and reasonably must follow; the existence of such facts may not depend upon guess-work, conjecture or speculation; instead, the evidence must tend to exclude every reasonable conclusion other than that sought. *Herberholt v. dePaul Community Health Center,* 625 S.W.2d 617, 623 (Mo. banc 1981), *Akers v. Lever Brothers Co.,* 432 S.W.2d 200, 203 (Mo.1968). Although an inference need not be justified beyond all doubt, where the evidence affords no more than equal support for either of two inconsistent and contradictory inferences as to the ultimate and determinative fact, liability is left in the field of conjecture, and there is a failure of proof. *Herberholt,* 625 S.W.2d at 623; *Farnham v. Boone,* 431 S.W.2d 154, 156 (Mo.1968). In our opinion, plaintiff's evidence is as consistent with an inference that the reason for plaintiff's discharge was Charles Johnson's belief that his work was unsuitable for the position he held as with any other inference. Because plaintiff fails to cite substantial evidence that defendant's service letter falsely stated the reason for his discharge, he is not entitled to an inference of malice or an award of punitive damages based on an intentional false statement.

In a third point, plaintiff contends that defendant's service letter failed to set forth "the nature and character of service rendered by [him] ... and the duration thereof ...," as required by § 290.140, RSMo 1969. In defendant's service letter, plaintiff's service was described as "sales

work, holding various jobs in our sales department. For approximately the last four years of employment, you were marketing director responsible for Associated Grocer Stores." The duration of plaintiff's employment was described as beginning "on July 21, 1958" and terminating "March 13, 1976." As plaintiff points out, the letter failed to mention his first period of employment with defendant, failed to enumerate all positions he held and failed to detail the duties involved in each position. Plaintiff cites *Walker v. St. Joseph Belt Railway Co.*, 102 S.W.2d 718 (Mo.App.1937), and *Lyons v. St. Joseph Belt Railway Co.*, 232 Mo.App. 575, 84 S.W.2d 933 (1935), as authority that such defects are actionable. In *Walker* and *Lyons,* however, the plaintiffs performed significant services not covered even generally in the service letters.[8] In each case, furthermore, the letters were defective in other vital respects that alone would have supported recovery.[9] Here defendant's service letter portrayed plaintiff as a long time employee who held a number of sales related positions with at least four years management experience. While that description is not as detailed as possible, it is generally accurate and omits no significant duty performed by plaintiff. In view of our determination that defendant's service letter failed to satisfy the requirements of § 290.140, RSMo 1969, in another respect thus permitting an award of actual or nominal damages, we need not reach the question of whether defendant's description of plaintiff's service would alone constitute an actionable violation of § 290.140. Nevertheless we find the description was neither sufficiently inadequate nor misleading to justify an inference of malice and an award of punitive damages.

In accordance with these findings, we reverse the trial court's judgment N.O.V. with respect to nominal damages and order the judgment in plaintiff's favor for $1.00 damages reinstated. We affirm the judgment N.O.V. with respect to punitive damages. Because the issues herein are determined as a matter of law, further trial is not required and we vacate the alternative order granting a new trial. The cause is remanded for entry of orders consistent with the views here expressed.

WELLIVER, HIGGINS and DONNELLY, JJ., and MORGAN and SEILER, Senior Judges, concur.

GUNN, BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.

---

**8.** The service letter in *Walker* read:

> F.E. Walker entered the service of the St. Joseph Belt Ry on Jan 10, 1918, as roundhouse man promoted to Locomotive Fireman on June 22, 1918. Cut off the Extra Board July 1, 1932.

102 S.W.2d at 720. Evidence showed that in addition to the duties of roundhouseman and fireman, plaintiff performed services as engineer, hostler and mechanic's helper. 102 S.W.2d at 721.

> The service letter in *Lyons* read:
> J.H. Lyons entered the service of the St. Joseph Belt Ry. Co. of St. Joseph, Mo., on Sept. 8, 1902, as Round House Man; dismissed from the service of this company June 13, 1932, working as locomotive fireman. Service unsatisfactory.

84 S.W.2d at 936. The evidence tended to show that plaintiff also served as an engineer. *Id.*

**9.** In *Walker,* the service letter failed to show it was written by a superintendent or manager of the defendant or on behalf of the defendant, and failed to state for what cause plaintiff was discharged. 102 S.W.2d at 723–24. In *Lyons,* the service letter was not signed by a manager in his official capacity, did not give the kinds of work performed by plaintiff or the length of time given by him to different kinds of work and, the court also found, did not state the reason for plaintiff's discharge. 84 S.W.2d at 943.