**Harold ALDERSON, Appellant,**

v.

**CLARK OIL & REFINING CORPORATION, et al., Respondents.**

**Nos. WD 32436, 32471.**

Missouri Court of Appeals,
Western District.

May 4, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 23, 1982.

Application to Transfer Denied Sept. 13, 1982.

Michael W. Manners and Robert J. Graeff, Independence, for appellant.

William R. Williams, Thomas B. Sullivan, III, and Russell D. Jacobson, Kansas City, for respondents.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Appellant Alderson, plaintiff below, appeals from a judgment setting aside a jury award of punitive damages in the amount of $100,000 and granting judgment in favor of defendant Clark Oil & Refining Company on the punitive damages issue. He appeals also from the trial court's conditional grant of a new trial on the punitive damages issue, in the event of reversal on appeal of the judgment N.O.V. in Clark's favor. A judgment for plaintiff for $1.00 actual damages, based upon the jury's verdict, was left intact.

Clark cross-appeals the judgment for plaintiff for actual damages in the amount of $1.00, alleging the constitutional invalidity of the service-letter statute, § 290.140, RSMo 1978.

Clark's allegation that the service-letter statute, § 290.140, RSMo 1978, is unconstitutional raises the threshold question of our jurisdiction. Missouri Constitution, Article V, § 3. All the constitutional arguments advanced in Clark's brief have been considered by our Supreme Court (since Clark's brief was filed) and rejected. *Hanch v. KFC National Management Corp.*, 615 S.W.2d 28 (Mo. banc 1981); *Accord: Rimmer v. Colt Industries Operating Corp.*, 656 F.2d 323 (8th Cir. 1981). Clark acknowledges in oral argument here that the stat-

ute's constitutionality is not now a viable issue. In such circumstances, the allegation of the statute's unconstitutionality does not deprive us of jurisdiction. *Swift & Co. v. Doe*, 311 S.W.2d 15, 20–21[2] (Mo.1958); *City of Marshfield, ex rel. Hasten v. Brown*, 337 Mo. 1136, 88 S.W.2d 339, 340–341 (1935); *Renfrow v. Gojohn*, 600 S.W.2d 77, 79[3] (Mo.App.1980).

An earlier trial of the case resulted in a verdict for plaintiff of actual damages of $1.00 and $150,000 punitive damages.

The trial court after the first trial reduced the punitive damages to $100,000, the amount sought in the petition, then granted defendant's motion for a new trial when plaintiff refused to remit an additional $40,-000. The second trial resulted in the verdict and judgment now under review.

*Submissible issue of punitive damages.*

The first question is the sufficiency of the evidence to make a submissible case on the issue of punitive damages. We hold there was sufficient evidence to make a prima facie case on that issue. The trial court erred in granting judgment N.O.V. for defendant Clark on that issue.

The facts as disclosed by the evidence are as follows:

Plaintiff Alderson had been employed with defendant Clark Oil & Refining Company since July, 1975. In May, 1976, he was promoted to service station manager and had continued to manage a Clark station until his discharge December 7, 1976. His immediate supervisor was the retail sales representative, Charles Palmquist. Palmquist was in turn supervised by the district sales manager, David DeNeff.

On December 7, 1976, in the late afternoon, plaintiff on his way home after leaving work stopped at another Clark station to see one Bob Thompson, the manager of the other station. There plaintiff met Charles Palmquist, his supervisor, introduced above. Palmquist suggested that the three of them go out for a drink. Thompson declined, but plaintiff and Palmquist left for a nearby lounge. They tarried there for what was apparently several hours. During the course of the evening, Palmquist repeatedly asked plaintiff his opinion of Bob Thompson's potential for advancement. Plaintiff eventually voiced his lack of confidence in Thompson's ability because of shortages at his station. This statement apparently angered Palmquist who stated that plaintiff was probably the one whose station was short. Plaintiff offered him the keys to his station and invited Palmquist to conduct an immediate audit. Palmquist declined. There was evidence from which the jury could have found that Palmquist then discharged plaintiff from his employment.

After the two had parted company, plaintiff returned to his station. Palmquist had preceded him. Palmquist appeared to be intoxicated. Alderson summoned the police who asked Palmquist to leave, and Palmquist did so. Alderson then drilled open the safe because the safe had been tampered with and could not be opened with the keys. He removed upwards of $1,400 in cash. There is no claim that Alderson was exceeding his authority in doing this. He explained at the trial that he feared that Palmquist would fabricate a shortage of cash and that was his reason for taking the cash into his possession.

Plaintiff did not return to work after this time.

The next morning plaintiff met Palmquist at a doughnut shop at Palmquist's request. Palmquist asked plaintiff to forget the incident of the night before, but plaintiff refused.

Later on the same day, December 8, plaintiff received a call from David DeNeff, Palmquist's superior, who asked him to meet with him to discuss the situation. After hearing plaintiff's story, DeNeff indicated he would take action against Palmquist and made arrangements to meet with plaintiff again the next day to deposit the money which plaintiff had removed from the station safe. There was no discussion of shortages at plaintiff's station. DeNeff had never advised plaintiff that Clark was unhappy with his performance as a station manager. DeNeff said to plaintiff that "he

would have to fabricate a reason for termination because they were doing it". Plaintiff's testimony indicates he understood that this statement referred to his own termination.

On December 15 Alderson requested a service letter from DeNeff. The letter, signed by DeNeff, stated that Alderson had been employed by Clark from July 2, 1975, until December 17, 1976, when he was terminated due to poor maintenance of the station, untimely filing of master reports and a shortage of $400 uncovered in an audit on December 7, 1976.[1] DeNeff admitted in his testimony on the trial that the date of the termination should have been December 7, 1976, and also admitted that the audit was conducted on the 8th, rather than on the 7th, and was not completed until the 9th. He acknowledged that the alleged shortage was not a reason for the discharge. He claimed that the audit did reveal a shortage of $696.55, a point which was sharply contested upon the trial. Plaintiff testified that he had applied for many jobs since the receipt of the service letter but had not been hired. At the time of trial he was a welfare recipient.

Defendant Clark does not claim here that plaintiff did not make a submissible case for actual damages under the statute. Defendant's claim is that there was no case made out for punitive damages, a claim with which the trial court agreed in setting aside the punitive damages award to the plaintiff and awarding judgment N.O.V. to the defendant on that issue.

In order to make out a claim for punitive damages for the issuance by a defendant of a service letter containing false reasons for the plaintiff's discharge from his employment, plaintiff must show that the false statements of reasons were made with legal malice or with actual malice. This case was submitted upon a hypothesis of legal malice. With respect to legal malice justifying a punitive damages award, our Supreme Court has said, *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 624 (Mo. banc 1981):

> Nominal damages, properly found, serve as an adequate basis for an award of punitive damages where either actual or legal malice is present. *State ex rel. St. Joseph Belt Railway Company v. Shane*, 341 Mo. 733, 108 S.W.2d 351 (1937), "Legal malice exists where a wrongful act is intentionally done without just cause or excuse; whereas actual malice or express malice exists when one with a sedate, deliberate mind and formed design injures another." *Schmidt v. Central Hardware Co.*, 516 S.W.2d 556 (Mo.App.1974).

To the same effect, see *Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51, 58 (Mo. banc 1981).

There was evidence from which the jury could have found as their verdict shows that they did find, that the reasons for plaintiff's discharge stated in the letter were false, and known by defendant's agent DeNeff to be so when the letter was written. There was evidence that there had never been any complaint from plaintiff's superiors about his maintenance of the sta-

---

1. The letter reads as follows:
December 22, 1976
Mr. Harold Alderson
554 Oxford
Independence, Missouri 64053
Dear Mr. Alderson:
This is in response to your letter of December 15, 1976. Be advised that you were employed by Clark Oil & Refining Corporation as a manager of one of our stations. In such capacity, your responsibilities included the general management of our station located at 202 West 23rd Street, Independence, Missouri. I have enclosed a copy of a job description for a further amplification of your duties as manager.

You were employed from July 2, 1975, until December 17, 1976, and the reason you were terminated was that your performance simply was not satisfactory to Clark. That is, the station and its facilities were not maintained to Clark's standards, you did not furnish your Master Reports in a timely fashion to Clark, and on December 7, 1976, an audit uncovered a loss of almost $400.00 at the station you were managing.
Very truly yours,
Clark Oil & Refining Corporation
David W. DeNeff
District Manager

tion under his management, and never any complaint about the tardiness of his reports. There was evidence, too, that no shortage of $400 had been disclosed at the time of plaintiff's discharge, and that the shortage mentioned in the letter was not the reason for the discharge. Mr. DeNeff acknowledged in his trial testimony, in fact, that the shortage was not a reason for the discharge. There was the further testimony of plaintiff Alderson that Mr. DeNeff had told him on December 9 that "he would have to fabricate a reason for termination because they were doing it".

The evidence outlined in the preceding paragraph if believed by the jury, was sufficient to support a verdict for punitive damages. *Labrier v. Anheuser Ford, Inc.,* supra; *Herberholt v. dePaul Community Health Center,* supra; *Hanch v. KFC National Management Corporation,* supra.

Defendant Clark in its brief underlines testimony which contradicts plaintiff's case. It points to testimony which tends to show that plaintiff voluntarily quit, or offered to do so, on December 7, then on the next day undertook to withdraw his resignation. (The service letter itself contradicts that, however.) Defendant emphasizes the lack of detail in plaintiff's testimony of his discharge by Palmquist, and the lack of detail in his testimony about DeNeff's statement that he would have to fabricate a reason for discharging plaintiff. It points to its audit, made after the assumed December 7 termination date, showing that there was a shortage in the plaintiff's station accounts. Apparently it was this shortage—although unknown to defendant at the time of the termination—which defendant posited in the service letter as a reason for termination. This is indicated by the fact that Mr. DeNeff sought by his trial testimony to reconcile the $400 figure in the letter with the $696.55 shortage shown in the audit. The audit was sharply contested by plaintiff, who claimed that it was altered by defendant to show a non-existent shortage. All of defendant's arguments, however, go only to credibility and weight of the evidence, a matter for the jury to determine. *Hartley v. Matejka,* 585 S.W.2d 240, 242[10]

(Mo.App.1979); *Frisella v. Reserve Life Insurance Co. of Dallas, Tex.,* 583 S.W.2d 728, 734[14] (Mo.App.1979). Our task upon appeal is at an end when we determine, as we have, that there was substantial evidence supporting the jury's verdict.

*Propriety of trial court's conditional order of new trial.*

■ Appellant's next assignment of error is directed at the trial court's conditional order granting the defendant a new trial on the issue of punitive damages, in case the judgment N.O.V. for defendant did not survive appeal.

Appellant's point must be sustained and the order granting a new trial must be set aside. The ground specified by the court for the new trial order was "that there was insufficient evidence to make a submissible case thereon, as alleged in paragraph 9 of defendant's alternative motion". Said paragraph 9 of defendant's motion was directed at the sufficiency of the evidence to make a submissible case on the issue of punitive damages.

The failure to make a submissible case is not grounds for a new trial, but only for a judgment N.O.V. *Smith v. J. J. Newberry Co.,* 395 S.W.2d 472, 474 (Mo.App.1965). If the trial court grants a motion for a new trial on that ground, when plaintiff has in fact made a submissible case (as we have held that he did), such order granting a new trial is arbitrary and an abuse of discretion. *Lifritz v. Sears Roebuck & Co.,* 472 S.W.2d 28, 33 (Mo.App.1971).

*Propriety of instructions.*

■ Defendant Clark, in defending the court's order granting a new trial, says that there were grounds in its motion for a new trial other than that upon which the trial court based its order, which were meritorious and which required a new trial on the punitive damages issue. *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 451 (Mo. banc. 1980). It complains of two instructions:

It complains of plaintiff's verdict-directing instruction, which required a finding that the service letter did not "correctly

state the true cause" of plaintiff's termination. The complaint is of the use of the words "correctly state the true cause" rather than the statutory term "truly state the reason". The instruction as given complies with the prescribed MAI instruction, MAI 23.08. Respondent gives us no authority supporting its position, and advances no reason how the variance in language from statute to instruction was in any way prejudicial.

It complains next of the court's defining "malicious" as legal rather than actual malice, using MAI 16.01. Respondent argues that actual malice should have been required to be found. That argument, though, has already been disposed of supra. *Herberholt v. dePaul Community Health Center*, supra; *Labrier v. Anheuser Ford, Inc.*, supra.

The judgment is reversed and the cause is remanded to the trial court with directions to reinstate the verdict and judgment for the plaintiff.

All concur.