Paula R. NEWMAN, by her Next
Friend, Paul Newman,
Respondent,

v.

GREATER KANSAS CITY BAPTIST
AND COMMUNITY HOSPITAL ASSO-
CIATION, d/b/a Martin Luther King,
Jr., Memorial Hospital, a corporation,
Appellant.

No. KCD 30340.

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 2, 1980.

Application to Transfer Denied
Oct. 15, 1980.

Charles C. Shafer, Jr., Herman M. Shaffer, Kansas City, for appellant.

Bert H. Jacob, Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The appeal comes from a judgment on a jury award for $5,000 actual and $8,000 punitive damages for noncompliance with service letter § 290.140, RSMo 1978.

The plaintiff Newman was employed for part–time duty as a nurse's aide by the defendant Greater Kansas City Baptist and Community Hospital Association. Her employment began on March 4, 1975, and ended on October 8, 1976. On that date Personnel Director Strong delivered her letter to the plaintiff:

> According to hospital personnel policy # 701,[1] we regret that it is necessary to terminate your services effective immediately.
>
> I am sure you are aware of the incident leading to this action and hope that you understand that such behavior from an employee cannot be tolerated.
>
> It is our hope that this will serve as a learning experience for you.

The letter was a sequel to the report by nurse Lang to the hospital authority that credit cards and other items were stolen from her purse in the lounge. The property was later recovered by the police from a minor. The next day nurse Lang received a telephone call from one who engaged in this reported colloquy: "Mrs. Lang? My mother said call you. I owe you an apology . . . [f]or taking your things." Mrs. Lang asked: "Who is this?", to which was the response: "This is Paula . . . Paula Newman . . . I'm sorry that I did that because I have never done anything like that before . . . Please don't say anything to anyone, please don't tell anyone at the hospital." Mrs. Lang responded: "Okay."[2] The voice was not familiar to nurse Lang, nor did she know Paula Newman. The conversation was reported to the hospital and, in due course, the termination letter issued. The plaintiff protested her innocence to Ms. Strong, but to no avail. She then telephoned her father who came to the hospital and confronted Ms. Strong for an explanation. She arranged for a meeting after the weekend but neither the daughter nor the father appeared. That was the last exchange between the Newmans and hospital personnel except for an encounter on her appeal from the denial of unemployment compensation claim. The contemporaneous memorandum made by Ms. Strong of the events on October 8, 1976, [when she delivered the termination letter to the plaintiff] records that she informed Paula Newman the discharge was based on information gathered in the last two days. That conversation ended, according to memorandum, by the commitment to reinstate her, should the hospital find "some mistake was made on [its] part."

The theft of the purse was reported on October 4, 1976. The following day, the security department at the hospital was informed by the Kansas City, Missouri Police Department that a girl was in custody for attempted use of the Lang credit cards at

---

1. Ms. Strong explained that policy # 701 interdicted the stealth of personal property from the hospital premises and [presumably] required discharge from employment.

2. The deposition testimony of nurse Lang described a more ample telephone conversation. Among other things, the caller said she had attempted to use the stolen Lang credit card at a Macy department store, and asked nurse Lang not to prosecute her. [The police, according to the deposition testimony, had arrested the person who attempted that use of the credit card.]

the Macy store. The police requested that nurse Lang be informed her property was recovered. The identity of the girl was not given because of her juvenile status. It was the evidence at the trial that inquiry at the police department for the identity of the arrestee would not have availed because the person taken was a juvenile, nor is a record of arrest open to the public on any account. In any event, the security department of the hospital made no investigation to learn identity of the person found with Lang credit cards.

The police department record on the incident was produced under subpoena for the trial. The name of Sheila Lacy was discernible through the marks meant to expunge that record. The security file of Macy also disclosed that Sheila Lacy was the person apprehended in the attempted fraudulent use of the Lang credit cards. It was shown that the Lacy girl was also an employee at the hospital. The plaintiff Newman had met her once at a picnic where the Lacy girl came accompanied by a Newman cousin. At some time after the petition on the service letter request was filed, the Newman father–in some way not explained–learned from Sheila Lacy [whom he had met at the same picnic] that she stole the credit cards. Neither the plaintiff nor Newman shared the information with the hospital, but conducted the Lacy girl to their lawyer. The evidence made clear that Paula Newman was not the person who stole the credit cards nor was arrested for an attempt to misuse them.

The plaintiff Newman made request for a service letter under § 290.140 on October 11, 1976, for specific request–among others–as to "the real and true reason and cause for my termination of employment at the hospital." The service letter issued within days and gave as the cause for discharge: "Theft of personal property on hospital premises." The service letter reminded the plaintiff of the advisement to her at the time of termination that the hospital was ready to remedy any mistake as to the dismissal. The response was devised by the lawyer for the hospital and signed by Carl McCoy, comptroller and interim administra-

tor. The signatory had no personal knowledge of the matters recited. He derived the information of theft from the contents of the Newman personnel file and from Ms. Strong and nurse Lang. That source contained the denial by Paula Newman that she had stolen the property.

The plaintiff since the termination made eleven applications for employment as a nurse's aide. On each she gave as the reason of termination of prior employment: "Theft of personal property on hospital premises–falsely accused." These attempts at employment were all after her petition was filed. She continued unemployed at the time of trial.

The hospital contends numerous grounds of error, among them, that the plaintiff failed her burden to prove that the stated ground: *theft of personal property on hospital premises* was not the true reason for discharge. The plaintiff responds that the ground of theft was proven wrong and was a fact the hospital should have known on reasonable inquiry. The hospital makes rebuttal that liability under § 290.140 does not rest on proof that Paula Newman did not steal, but only that the hospital dismissed her for a reason ulterior to the ground stated–and that the absence of such evidence precluded a submissible issue.

■ The service letter statute was enacted to allay the practice, then rampant, of the pretextual disemployment of workers. *Cheek v. Prudential Ins. Co. of America*, 192 S.W. 387, 389[1] (Mo. 1917). The remedy of the statute was most cogent for union employees dismissed on a stated pretext, but actually as employer retaliation for collective bargaining activity. *Potter v. Milbank Manufacturing Company*, 489 S.W.2d 197, 203[1] (Mo. 1972); *Walker v. St. Joseph Belt Ry. Co.*, 102 S.W.2d 718, 723[4] (Mo. App. 1937); *Lyons v. St. Joseph Belt Ry. Co.*, 232 Mo.App. 575, 84 S.W.2d 933, 942[8] (1935). The statute works its purpose by requirement that an employer "truly stat[e] for what cause, if any, [the] employee has quit such service." The cause of action to a plaintiff under those terms is formulated by

MAI 23.08 "Your verdict must be for the plaintiff if you believe: . . . the defendant's letter did not correctly state . . the true cause of plaintiff's termination." Thus, the burden of proof on a plaintiff is a negative quality: that the reason for discharge stated in the service letter was not true; that is, was false. *Potter v. Milbank Manufacturing Company*, supra, l.c. 203[1]; *Dwyer v. Busch Properties, Inc.* (St.L.D. Nos. 40727 and 41237, adopted February 8, 1980); *Terranova v. Western Auto*, 589 S.W.2d 362, 363[1, 2] (Mo.App. 1979).

The plaintiff Newman asserts that evidence that she did not steal the property acquits her burden of proof under *Potter* [l.c. 203[1]]:

> [a] plaintiff has no burden of proving the true reason for his discharge; his burden is negative in character because such true reason is peculiarly within the knowledge of the employer, and *burden of showing the truth of the asserted reason for discharge is on the employer* [emphasis added]

and so the judgment for damages must stand. The rationale under *Potter* derives from the terms of the statute as formulated by MAI 23.08 *Potter*, supra, l.c. 203[1]. That decision makes no attempt to alter the terms of the statute as a remedy to discourage pretextual disemployments. Rather, the decisions—*Potter* and those others asserted as authority—*all* rest on evidence by the plaintiff of a reason for discharge ulterior to that stated in the letter. *Howe v. St. Louis Union Trust Company*, 392 S.W.2d 625, 630[8] (Mo. 1965); *Roberts v. Emerson Electric Manufacturing Company*, 338 S.W.2d 62, 68 (Mo. 1960); *Heuer v. John R. Thompson Co.*, 251 S.W.2d 980, 984[1] (Mo. App. 1952). In this proof, an employee need not delve the actual motives of the employer, simply because there is no access to that source. An employee can hardly know the reason an employer may actually entertain for the discharge—except by an avowal—except by proof of circumstances. *Potter* relieves an employee of that explanation because, in that sense, the "true reason is peculiarly within the knowledge of the employer."

■ The burden of proof *Potter* describes for a plaintiff, nevertheless, is to prove that the reason stated for the discharge was not true, but ulterior. In that perspective, the evidence that Paula Newman did not steal proves merely that the statement that she did steal was false, not that the reason stated for discharge was false. In fact, the evidence allows *no* inference other than that she was terminated because—without pretext, guile or ulterior motive—the hospital believed she stole. There was no proof that the reason given was a foil for a true but undisclosed cause. The want of such evidence amounted to a lapse to prove a submissible cause of action under § 290.140. *Terranova v. Western Auto*, supra, l.c. 363[1, 2]; *Dwyer v. Busch Properties, Inc.*, supra.

■■ There can be no doubt that in the absence of the statute, Paula Newman was subject to dismissal at will and without explanation, *Tolliver v. Standard Oil Company*, 431 S.W.2d 159, 164[8] (Mo. 1968).[3] The right Paula Newman claims can derive only from the statute which became part of her arrangement for employment with the hospital. *Cheek v. Prudential Ins. Co. of America*, supra, l.c. 393[7]. The contention that evidence that she did not steal proves a submission under the statute—without other contradiction that it was not the true cause of discharge—disallows an employer even the benefit of an honest sincerity and invests to an employee a right akin to property.[4] The plaintiff would require that the

---

**3.** The petition was tried on the separate count for noncompliance with § 290.140. The pleaded cause of action for wrongful discharge was dismissed by Paula Newman before evidence was heard. The plaintiff does not rest her right to recovery on a contract for employment at a definite term, but only under § 290.140.

**4.** A contention of honest belief constitutes no defense to the employer to a § 290.140 action where there is evidence that the true reason for discharge was other than stated. *Roberts v. Emerson Electric Manufacturing Company*, supra, l.c. 68; *Potter v. Milbank Manufacturing Company*, supra, l.c. 206[9]. In the absence of

cause stated be actual in fact—that is, for cause—and by implication impose liability for failure of investigation and judgment. The statute does not go that far as a remedy.

An entry of judgment on the motion of defendant for a directed verdict at the close of all the evidence subserved the purpose of the statute and should have been sustained. The judgment is reversed and remanded for entry of judgment for the defendant.

All concur.

such prima facie proof, to allow recovery to a plaintiff despite honest belief for the reason stated elevates the cause of action to a status of employment for which only just cause suffices for termination.