Donald G. BLIVEN, Respondent,

v.

BRUNSWICK CORPORATION,
Appellant.

No. WD 32250.

Missouri Court of Appeals,
Western District.

July 27, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 31, 1982.

Application to Transfer Denied
Oct. 18, 1982.

William H. Bates, Kathryn H. Vratil, Kansas City, for appellant.

Howard E. Bodney, Kansas City, for respondent.

Before KENNEDY, P. J., and CLARK and MANFORD, JJ.

MANFORD, Judge.

Defendant appeals from an adverse judgment arising from a claim for damages pursuant to § 290.140 RSMo 1978. The judgment is reversed.

While numerous errors are charged, due to disposition of this appeal, only one alleged error is considered. In summary, it is alleged the trial court erred in overruling appellant's motion for judgment N.O.V. because respondent failed to make a submissable case.

The record reveals the following pertinent facts. Respondent (employee—plain-

tiff at trial) commenced employment with appellant (employer—defendant at trial) on December 30, 1974. He was hired as an assistant manager trainee of the Gladstone Bowl, a bowling alley located in Gladstone, Missouri. The contract of employment was oral following submission of a written application for the job. Respondent's job performance at the Gladstone Bowl was good. Subsequently, respondent was given the opportunity to apply for a manager's position at a small bowling alley in New Orleans, Louisiana. Respondent accepted the offer on September 4, 1975. The manager's position provided increased pay and increased managerial responsibilities and duties to respondent. Respondent moved to New Orleans and while there he applied for and received a Louisiana driver's license, Louisiana license plates for his automobile and paid state income tax to the State of Louisiana. The record reveals, as a result of the lack of trained personnel and equipment breakdown, respondent encountered management problems. Respondent's immediate employment superior in New Orleans asked one Wayne Dollar, District Manager for seven states (including Iowa, Kansas and Missouri), if Dollar could place respondent in Dollar's district as an assistant manager. The record shows Dollar personally liked respondent and to prevent respondent's termination, Dollar offered respondent an assistant manager's position in a bowling alley in Council Bluffs, Iowa. Respondent accepted Dollar's offer and commenced work in Iowa on February 8, 1976. While in Iowa, respondent paid income tax to the State of Iowa for the two month period he resided there. Respondent's pay was not diminished by his moving to the location in Iowa. After some two months, respondent was offered the job as manager of the Frontier Fun Center in Wichita, Kansas. After a "nice lengthy discussion" with his wife, respondent accepted the managers job in Wichita and took up that position April 5, 1976. Respondent's predecessor had been promoted to a larger operation because of the success of the center in Wichita.

The center in Wichita included an 18 hole (indoor) miniature golf course, archery facilities, billard pool tables, electronic games, snack bar, pro shop, a cocktail lounge and a 20 lane bowling alley. Respondent was placed in charge of the entire operation and his duties included organization development, promotion and control of the operation toward producing a profit. During respondent's tenure as manager, the Wichita center suffered from a decline in the number of lanes bowled, gross margins and overall revenues. Respondent acknowledged these losses and stated, " . . . our daytime ladies' lineage was down considerably from the prior year . . ." Respondent attributed that loss to the fact that the former program director had gone to work for a competitor. Respondent also claimed the evening lineage was increased, " . . . or on a par with what the evening lineage was the prior year. Our junior league lineage was ahead of the prior year."

As district manager, Dollar monitored the Wichita operation and held meetings with respondent and other employees every three/four weeks. Dollar testified that revenue figures had maintained the status quo or declined. In September, 1976 Dollar decided he had management problems with the Wichita operation and on September 14, 1976, placed respondent on probation. On that same date, respondent was provided a letter listing the reasons for probation. The letter read as follows:

"OFFICIAL PROBATION   September 14, 1976

|  |  |  |  |
|---|---|---|---|
| To: | Don Bliven | copies to: | J. Chauncey |
| Department: | Frontier Fun Center |  |  |
|  | #536 |  | A. Weiner |
| location: | Wichita, Kansas |  | J. Lauderback |
| From: | Wayne Dollar |  |  |
| Department: | District Manager |  |  |
| location: | Gladstone, Mo. |  |  |

This is to advise you that you have been placed on official probation as of today's date. The reasons for this action being taken are outlined below.

1. On several occasions since you have been in the Kansas City district I have indicated to you, and all center managers, that I did not want any surprises. I have also indicated that included in the list of surprises was notification of your whereabouts if you left your center for a period of time.

On Friday, September 10, 1976, I received a phone call from an irate bowler (league officer) that there were some problems to be ironed out. He made the call because you could not be contacted either at the center or at home. Following this call, I contacted

your assistant manager and told him to try and get you to contact me. No contact was made because you were out of the city. Surely you must realize the importance of being available at the center during this period of league organization and starting up the fall season. I cannot comprehend why you would leave your center for three days at the beginning of September, and to top it all off, not leave any indication where you could be reached with your assistant manager. In my opinion, you just do not care about your responsibilities.

2. Lack of communication — we have discussed this repeatedly. Still there are the same problems; your employees are not involved with your expectations or goals. As a result, you are receiving mediocre performance. The figures attest to this, as outlined below. The March figures as compared to August 1976, reflect your efforts to date — all negative.

1. Revenues are now negative.
2. Gross margin negative.
3. Lineage negative.

#### Comparisons to Budget

| Category | March 76 | August 76 | + or − |
|---|---|---|---|
| Bowl Revenue | + 3105 | − 3651 | − 6756 |
| Shoe Rental | − 463 | − 1166 | − 703 |
| Billiards | − 213 | − 970 | − 757 |
| Vending | + 1048 | + 423 | − 625 |
| Food | + 2121 | + 949 | − 1172 |
| Total Revenue | + 7276 | − 6749 | −14025 |
| | | | |
| Gross Margin | + 13424 | + 5846 | − 7578 |
| | | | |
| Total Lineage | + 5366 | − 3331 | − 8697 |

In summation, I feel that you and your staff are giving a token of what is required because of the lack of direction. I must have 100% performance by everyone and you should demand this from your people and yourself.

This probation will be effective immediately and will remain in effect until a definite improvement is shown. If your intentions are to stay with Brunswick, I would advise you to reactivate your interest. It is up to you to put forth the effort required.

s/Wayne Dollar"

During the probationary period, at Dollar's suggestion, weekly staff meetings and special bowling parties were held. Respondent tried "to do even a better job". Dollar advised respondent there was "a lot of pressure" to increase the adult league lineage and that he (Dollar) would "put a lot of heat on plaintiff [respondent] if the goals for that center were not met". In spite of respondent's efforts, the revenues of the center continued to decline and respondent's efforts "did not come up to expectations at all". The record reveals by years end that 1976 profits of the center had dropped 12 to 15% compared to previous years. It was Dollar's opinion that if the financial status of the center was not improved and continued for an additional six months, the operation would be financially ruined. Dollar also concluded that respondent's work was non-productive, that respondent was trying to do all the work himself and that while respondent had the capacity as an assistant manager, he could not handle the job of manager. Respondent and Dollar discussed the problems and on one occasion respondent stated to Dollar that management was not his bag.

Following the foregoing events, based upon unsatisfactory job performance, respondent was terminated by Dollar on December 29, 1976. On that same date, Dollar provided respondent with the following letter:

| "TERMINATION | | December 29, 1976 |
|---|---|---|
| To: Don Bliven | copies: | J. Chauncey |
| Department: Frontier Fun Center | | J. Lauderback |
| location: Wichita, Kansas | | J. Bakula |
| | | |
| From: Wayne Dollar | | |
| Department: District Manager | | |
| location: Gladstone, Mo. | | |

Effective September 14, 1976, you were placed on official probation as manager at Frontier Fun Center. The primary reasons for your placement on probation were as follows.

General deterioration of business, lack of communication with personnel and lack of leadership. Since September 14 your progress has been duly noted with regard to the above as well as the implementation of promotional programs and special events. Our overall position with regard to revenues, lineage and costs has deteriorated to the point where we are now behind 1975 actuals.

Although there are some areas that are slightly ahead, these are not sufficient to keep us in a positive position. In my opinion, your lack of leadership is still evident with respect to promotional efforts being given by your staff. For the period September through December total new bowlers put into leagues from Learn to Bowl classes has been eight. This is a pitiful performance. In addition, six bowling parties were conducted with 210 people in attendance, with zero conversion to league play. A comparison of weekly summaries depicts our business progress from October to December and shows an increase of 18 adult league lines and 58 junior league lines.

You are, at best, maintaining the status quo with no visible areas of improvement. As I have previously mentioned on several occasions, you cannot expect to get the job done by doing it yourself. You have to rely on your people. It appears evident that this has not been accomplished. I do not feel that you have responded to the challenge of total involvement, and as a result this is still lacking in your personnel. Since December 1974 you have had several opportunities to, in essence, get on the Brunswick program. In my opinion, you have not done this.

In summation, and as you have previously indicated, management is not your "bag". In the interest of Frontier Fun Center, the Kansas City district, and the BRC Divisions, a severance of your employment at this time would be beneficial to both the company and yourself.

s/Wayne Dollar"

On February 9, 1977 respondent made a written request for a service letter. The letter read as follows:

Feb. 9, 1977

"Mr. Al Weiner
B. R. C. Division
Brunswick Corp.
Dear Mr. Weiner,

On Dec. 29, 1976 I was terminated as the manager of Frontier Lanes, Wichita, Kansas. At that time Wayne Dollar gave me a memo titled Termination but I have read and reread it several times and can not find out exactly why I was dismissed. Therefore, I am asking that you send me a Service Letter explaining exactly why I was terminated. I would like to have this Service Letter by Feb. 25, 1977 or I may have to seek legal advise.

Respectfully,
s/Donald G. Bliven
8239 Mackey
Overland Park, Ks. 66204"

Respondent's letter above (under date of 2–9–77) was acknowledged by a letter from the Personnel Director for appellant's employer which read:

"February 16, 1977
Mr. Donald G. Bliven
8239 Mackey
Overland Park, Kansas 66204
Dear Mr. Bliven:

This will acknowledge your recent letter dated February 9, 1977 addressed to Mr. Al. Weiner.

Please be advised that we have forwarded your letter for response to Mr. Wayne Dollar, District Manager. You should be hearing from Mr. Dollar in the very near future.

Sincerely,
s/John R. Lauderback, Personnel Director"

Pending a response to his request, respondent threatened legal action. The matter was considered by in-house counsel for appellant, who in turn consulted with *outside* (Missouri) counsel. These attorneys opined that respondent was not entitled to a service letter pursuant to *§ 290.140, supra,* because at the time of termination respondent was working in the state of Kansas. Based upon this conclusion, no letter was provided.

Respondent commenced this action June 16, 1977 claiming damages upon respondent's failure to provide him with a service letter. The petition was met by a motion to dismiss that alleged the petition failed to allege facts sufficient to require appellant to furnish a service letter to respondent because respondent was not working in Missouri for a corporation doing business in Missouri at the time of termination. The trial court sustained the motion to dismiss on August 19, 1977. Prompt appeal to this court by respondent followed the dismissal. The court reversed the trial court ruling in *Bliven v. Brunswick Corp.,* 575 S.W.2d 788 (Mo.App.1978). Following this court's decision, appellant unsuccessfully sought alternatively, a rehearing or transfer to the state Supreme Court. Final action concluded February 13, 1979. On March 14, 1979 the following letter was forwarded to respondent:

March 14, 1979

"Mr. Donald G. Bliven
4902 Raytown Road
Raytown, Missouri 64133
RE: Your Request of February 9, 1977
Dear Mr. Bliven:

This letter is in response to your request under the date of February 9, 1977, to Mr. Al Weiner. As you are aware, it has been the position of the Company that it was not required to respond to that request, since you were employed in Kansas at the time of your termination. However, this question has been presented to the Circuit Court of Missouri and it now appears to be the opinion of the appellate court that the Company may be required under Missouri law to respond to your February 9, 1977, request which we therefore now do.

The records of the Company reflect that you were hired on December 30, 1974, and began work on the same date. Your first job assignment was that of Assistant Manager of the Gladstone Bowl in Kansas City, Missouri.

Beginning September 4, 1975, your job assignment was changed to that of Manager of the Orbit Lanes in New Orleans, Louisiana.

Beginning February 8, 1976, your job assignment was changed to that of Assistant Manager of the Valley View Lanes in Council Bluffs, Iowa.

Beginning April 5, 1976, your job assignment was changed to that of Manager of the Frontier Fun Center in Wichita, Kansas.

In your capacity as an Assistant Manager of a Brunswick facility, you were to assist the manager in the operation of the center with assigned responsibility and functions, assuming the operational control in the absence of the manager.

In your capacity as a Manager of a Brunswick Facility, you were responsible for the complete operation of the bowling center or centers, including all affiliated and subsidiary operations. You were to organize, develop, plan and control operation and promotion of a bowling establishment, including all affiliated operations, in order to provide a community recreational service at a profit.

On September 14, 1976, you were placed on official probation as manager of the Frontier Fun Center, the reasons for your probation being contained in the probation letter of September 14, 1976, to you from Wayne Dollar, a copy of that letter is marked as Exhibit 1, attached hereto and is made a part of this letter.

You were terminated on December 29, 1976. The true reasons for your termination are contained in your termination letter of that date to you from Wayne Dollar, a copy of that letter is marked as Exhibit 2, attached hereto and made a part of this letter.

Sincerely,
BRUNSWICK CORPORATION
s/John R. Lauderback
Personnel Director"

The cause came to trial June 30, 1980, and on the morning of the trial respondent filed an amended petition. This amended petition alleged unreasonable delay in providing the service letter and alleged that the letter did not correctly state the true causes of respondent's termination. Following trial, the jury awarded a general verdict in the sum of $10,000.00 actual damages and $25,000.00 punitive damages. This appeal followed the denial of after-trial motions.

Before addressing appellant's alleged error with specificity, clarification of this court's decision in *Bliven,* supra, must be undertaken. This court's prior ruling addressed the issue of dismissal of respondent's petition. It is readily observable that in the context of a petition, we concluded that where an employee was a Missouri resident upon employment, the employment contract was entered into in Missouri, the employer was doing business in Missouri and the employee serves the employer for a period exceeding 90 days, the employee was entitled to a service letter upon termination, although at the time the employee was terminated he was not working in Missouri.

Respondent places strong reliance upon this court's prior *Bliven* ruling and contends that it established the law of the case. This is an erroneous conclusion. The prior *Bliven* ruling addressed only the issue of whether under the facts pleaded, respondent stated a cause of action. The prior *Bliven* ruling did not address the evidentiary aspect of the dispute. The so called doctrine of the law of the case comes into existence and is applicable when a court has addressed the merits of the case in a prior appeal and "the evidence on the second appeal is substantially the same as on the first appeal". *Davis v. Moore,* 601 S.W.2d 316, 318 (Mo.App.1980). Such doctrine could not apply because the prior *Bliven* ruling gave no consideration to the evidence since in the prior proceeding, the evidentiary stage was never reached prior to the court's ruling.

It must be further noted in the prior *Bliven* ruling that this court discussed the essential element of supporting evidence in the following language: "Further, the propriety of the *judgment of dismissal* depends

upon whether the petition involves legal principles *which if the evidentiary facts support such* principles, entitle *Bliven* to relief." (citations omitted) (emphasis added).

Respondent would urge upon this court the conclusion that appellant's liability and responsibility for payment of damages were fixed by the prior *Bliven* ruling. This court in *Bliven* did not adjudicate appellant's liability but correctly limited that judgment to a point in the proceedings prior to the submission of the evidence upon the issues. This court merely declared that, based upon the facts pleaded, the trial court erred in dismissing that petition. This court's prior *Bliven* ruling should not be expanded beyond the decisional limits prescribed in that decision. It should also be noted that subsequent to the prior *Bliven* ruling and commencement of trial, respondent amended his petition. There is nothing within this court's prior *Bliven* ruling that prohibits, restricts or mandates to this court, in any manner, that it should consider this appeal differently than as if this cause were presented to this court for the first time.

■ The burden of proof required to sustain recovery under *§ 290.140,* supra, has been carefully prescribed by two leading cases on the subject. First, our state Supreme Court has declared that it is not part of the employees burden to plead or prove the actual or true reasons for discharge or termination but rather the " . . . burden of showing the truth of the asserted reason for discharge is on the employer". *Labrier v. Anheuser Ford Inc.,* 621 S.W.2d 51, 57 (Mo. banc 1981). See also, *Sweet v. John Deere Company,* 625 S.W.2d 936 (Mo.App.1981). In addition, however, an employee bears the burden of proving the reason for discharge was not true. See *Newman v. Greater Kansas City Baptist, etc.,* 604 S.W.2d 619, 622 (Mo.App.1980), which adopted and reaffirmed the rule in *Potter v. Milbank Manufacturing Company,* 489 S.W.2d 197 (Mo. 1971). *Labrier,* supra, should not be construed so as to relieve an employee of the burden of proving the reasons within a service letter are false. That burden must still be borne by the employee. *Newman,* supra.

■ As against the rules announced in *Labrier, Newman* and *Potter,* supra, the evidence upon the record in this case reveals respondent failed to carry his burden of proof. Before considering the pertinent evidence upon that question, mention must be made of the claim of unreasonable delay in providing a service letter as alleged in the amended petition. The "delay" complained of resulted not from spite or ill will by appellant or its representatives, but rather, as a result of advice from legal counsel that respondent was not legally entitled to a service letter pursuant to *§ 290.140,* supra. In fact, formal challenge to respondent's petition was made by appellant and culminated in the prior *Bliven* decision. The record reveals that within 30 days following final action by this court, appellant supplied respondent with a letter. The "delay" was occasioned by the initiation of legal process over a bona fide belief that there was a valid legal dispute between the parties and from the time lapse involved between commencement of the action and final disposition by this court in the prior *Bliven* decision. There is no merit to respondent's contention of unreasonable delay.

■ As regards the evidence in the instant case, it must be noted that the record is devoid of any claim or proof of any malice or ill will against respondent by appellant or by any of appellant's employees or representatives. In fact, respondent testified that he was never aware Dollar was "out to get him", malicious towards respondent or mean toward respondent. Except for the fact that Dollar terminated him, respondent's testimony revealed that their relationship was friendly and free of problems.

Review of the evidence reveals that appellant is a multi-purpose corporation. Appellant is a profit-making enterprise and is, of course, dependent upon its employees to produce the sought-after result. The evidence reveals appellant is engaged in a highly competitive business activity. It can also be inferred from the evidence that

respondent was very much aware of the competitive atmosphere and his role in the process. The record reveals that respondent realized the importance of promotion of appellant's services and programs and because of several meetings held for promotional purposes, he was very much aware of his responsibilities toward the success of such activities. In sum, respondent was made aware of what was expected of him in a managerial capacity. The record also reveals that "pressure" or "heat" was applied throughout the company structure of appellant and that respondent and Dollar had discussed this issue. In fact, respondent testified, in a conversation with Dollar (which pre-dated respondent's probationery period), "He [Dollar] indicated to me that there was a lot of pressure for us to bring up the lineage in the adult bowling and that a lot of heat would be put on him, and he would put a lot of heat on me if we did not reach our goals".

Appellant argues the insufficiency of evidence from which the jury might find appellant's service letter did not state the reason for respondent's termination. It should be noted that the letter of March 14, 1979 (above) incorporated by reference correspondence from appellant to respondent dated September 14, 1976 (probationery notice above), as well as, the termination letter dated December 29, 1976 and that no challenge to incorporation by reference has ever been made by respondent. This court thus perceives the letters of March 14, 1976, December 29, 1976 and September 14, 1976 to constitute the "service letter" in this case. As can be observed in the letter of March 14, 1979, appellant advised respondent, "The true reasons for your termination are contained in your termination letter of that date ..." (letter of December 29, 1976 above). It can be observed from the testimony at trial, coupled with the above referenced correspondence, that respondent was terminated because he lacked management capability. Respondent confronts appellant's challenge to the evidence by arguing that a submissible case was made for unreasonable delay in providing a service letter and that the citation in the "service letter" of a "general deterioration of business, lack of communication with personnel and lack of leadership" was inconsistent with Dollar's testimony that the reason for termination was "unsatisfactory job performance". As noted above, this court has already found no merit to respondent's argument of unreasonable delay. As to the second part of respondent's argument, it also fails. In the first instance this court is not persuaded that any disparity exists between the reasons given within the "service letter" and the testimony of Dollar. Certainly, it must be concluded that "unsatisfactory job performance" could and perhaps would include "lack of communication with personnel" and "lack of leadership" under any set of circumstances. It is inescapable that when the particular situation involves the evaluation of one's managerial performance, "lack of leadership and lack of communication with personnel" are terms well within the extent, purport and meaning of "unsatisfactory job performance". To conclude otherwise is to engage in a superfluous exercise in semantics at the expense of the merits of the subject under consideration. Respondent urges this court that the instant case is within the rule of *Potter*, supra, which provides:

"... plaintiff made a submissible case on whether the service letter stated the true reason for his discharge because there is evidence from which the jury reasonably could find that he performed efficiently; that he was not an exceptionally slow, argumentative, error prone worker during the trial period or at anytime during his entire employment and that he was fired for his union activity." *Potter* loc. p. 204.

The above quoted portion of *Potter*, supra, does not aid respondent position in light of the lack of disparity between the language used in the "service letter" and the testimony of Dollar as noted above. Respondent points out, and the same is conceded by appellant, that this court is required to review the evidence and reasonable inferences therefrom most favorable to respondent and disregard appellant's evi-

dence except as it aids respondent's case. *Bennett v. North Brighton Townhouses, Inc.,* 588 S.W.2d 100 (Mo.App.1979). Such a rule, however, does not remove the burden from respondent to prove the essential elements of his claim pursuant to *§ 290.140.* Respondent had the burden of proving that the reasons stated in the "service letter" were false and that the reason or reasons for his termination were not true but ". . . a foil for a true but undisclosed cause". *Labrier, Newman,* supra.

The record lacks evidence proving that appellant terminated respondent for any reason other than those given in the "service letter". *Newman,* supra.

With regard to the testimony of the "heat" and "pressure" being applied if certain goals were not achieved, respondent argues that such evidence established the falsity of the "service letter" because such evidence proved instead that Dollar wanted to be promoted. The evidence upon the record does not support the conclusion that the "heat" or "pressure" was an "ulterior" reason. *Newman,* supra. Review of the testimony relative to the "heat" or "pressure" reveals its direct relationship to respondent's failure to meet goals prescribed by appellant. This is best illustrated by respondent's testimony above, wherein he acknowledged that "heat" or "pressure" would result upon failure to achieve. Within the particular facts and circumstances presented, the conclusion that "heat" and "pressure" would occur, as a direct result of the job performance of respondent, is inescapable.

In summary, it is the opinion of this court that the trial court erred in its failure to sustain appellant's motion for judgment N.O.V. because respondent's evidence failed to prove that the reasons set forth in the "service letter" were false. *Labrier,* supra. Respondent's evidence also failed to prove that the reasons set forth in the service letter were not true but instead were ". . . a foil for a true but undisclosed cause". *Newman,* supra.

For the reasons set forth herein the judgment is reversed.

KENNEDY, P. J., concurs.

CLARK, J. concurs in result.