Lawrence SCHNELTING,
Plaintiff-Appellant,

v.

COORS DISTRIBUTING COMPANY
OF MISSOURI, and Adolph Coors
Co., Defendants-Respondents.

No. 51829.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 14, 1987.

Motion for Rehearing and/or Transfer
Denied May 20, 1987.

William R. Hirsch, Clayton, for plaintiff-appellant.

Jerome Wallach, St. Louis, for Coors Distributing Co.

Gary Paul, Clayton, for Adolph Coors Co.

REINHARD, Judge.

Plaintiff appeals after the trial court granted defendants' motion for directed verdicts on all four counts of his petition at the close of plaintiff's evidence. In Count I plaintiff attempted to state a claim for wrongful discharge; Count II was based upon the service letter statute, § 290.140, RSMo 1986; Count III contained allegations of slander; and Count IV was premised upon the doctrine of prima facie tort. We reverse and remand the judgment in favor of Coors Distributing Company on the service letter count and affirm the judgment in all other respects.[1]

Plaintiff's evidence revealed that he was hired by Coors Distributing Company (CDC) in September of 1978, and in October of 1982 plaintiff was CDC's highest paid warehouse employee. Part of his job included inventory control and security of the warehouse.

On Friday, October 1, 1982, plaintiff and a janitor from an independent cleaning service were the only persons remaining in the warehouse as closing time approached. Plaintiff was finishing his nightly inventory and preparing to lock the building when the janitor informed him that there was a case of beer in the trash can and asked if it was any good. Plaintiff checked the date on the beer and said, "No, it's old beer, dump it." The janitor asked if he could have the beer and plaintiff replied, "Well, sure. It's in the trash can. You want it; you take it." Plaintiff was still finishing his inventory a short time later when he received a phone call from the janitor, who told him that John Winkleman, the warehouse manager and plaintiff's superior, had come in the building and seen the janitor with the case of beer. The janitor stated, "I think the man thinks I'm trying to steal it." Plaintiff told the janitor not to worry about it and that he would explain the situation to Winkleman on Monday. The janitor left the beer in the building.

When plaintiff arrived at work on Monday he told Winkleman that the janitor had found the beer in the trash and explained that he had given the janitor permission "to go ahead and take the case of old beer out of the trash can." The next day, Winkleman met plaintiff at the door with plaintiff's paycheck and told him, "Lon, I called Denver, I have talked to Paul Helmer, I talked to Vince [Ventimiglia], we've all talked. You're done, you're out, this is it. You broke a company policy." Plaintiff asked, "What did I do?" Winkleman responded, "You allowed that janitor to have beer." Plaintiff signed a termination report which stated: "Lon knowingly allowed and permitted Troy Green, janitor, to take beer from Coors Distributing Company."

Plaintiff testified that on a previous occasion the same janitor had inquired about a piece of aluminum railing which he found by the dumpster. Plaintiff told Green that he would check with Winkleman, and Winkleman said, "Lon, anything that man finds in a dumpster or the trash, if he wants it, tell him to go ahead and take it."

Much of the evidence concerned the policy and practice at CDC regarding out-dated beer. Coors beer is not pasteurized and company policy is that beer more than 60 days old is not to be sold. Out-dated beer is not considered "in stock." Karen La-Claire, who was in charge of CDC's recycling program, testified that old beer was supposed to be "dumped out" and the aluminum cans recycled. A record was kept of the old beer returned by the "trucker/salesmen" and they were charged with the amount of any commission which had been paid on that beer. There was concern

---

1. Plaintiff has dismissed his appeal of the direct- ed verdicts in favor of Adolph Coors Company.

among the salesmen that they would be fired if they returned too much out-dated beer, and they occasionally hid old beer on their trucks and repackaged it. Sometimes out-dated beer was simply dumped in the trash and covered up.[2] LaClaire testified that "[t]he beer that was dumped in the trash can [was] not supposed to be there. It should have been on a pallet [to be taken to the recycling machine]."

However, there was also testimony that old beer was frequently given away to truck drivers and others by, or at the instruction of, management personnel. In addition, CDC maintained a hospitality room at the warehouse where employees and their friends could drink "close dated" beer and beer that was slightly out-of-date. In short, plaintiff's evidence indicated that old beer was not always "dumped out."

■ Against this factual background, we examine plaintiff's points on appeal. In reviewing plaintiff's contentions of error, we are mindful that a directed verdict is a drastic action and should be granted only if reasonable and honest persons could not differ on the disposition of a case. *Peete v. Equitable Life Assurance Society of U.S.,* 697 S.W.2d 232, 235 (Mo.App.1985). In passing upon a motion for a directed verdict, the reviewing court must give plaintiff the most favorable view of all the evidence and the benefit of all favorable inferences to be drawn therefrom. *Id.*

We first consider whether the court erred in granting defendants' motion for directed verdict on plaintiff's claim of wrongful discharge. Plaintiff contends that he was discharged in violation of the provisions of an employee handbook distributed to him when he was hired by CDC, relying upon *Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 153 (Mo.App.1983) and *Enyeart v. Shelter Mutual Insurance Co.,* 693 S.W.2d 120 (Mo.App.1985). CDC agrees that it was bound to follow the procedures contained in the handbook but argues that

immediate discharge was warranted under several provisions of the employee manual.

■ We need not resolve that question, however, because we agree with defendants' argument that plaintiff did not utilize the appeal procedures provided for in the handbook. Plaintiff's only attempt to seek a review of his dismissal was a letter written by his wife to Pete Coors, to which there was no answer, and two unsuccessful attempts to contact Pete Coors by telephone.

Plaintiff's exhibit 10, page 9b of the handbook, provides:

1. If an employee has good cause to believe that he/she has been disciplined in a manner which is an incorrect application of company policy, then the employee has the right to have their problem reviewed by their supervisor, department head, General Manager and, if necessary, a Review Board.

2. The Review Board will consist of the following:
   (a) The employee's department head.
   (b) The General Manager.
   (c) Two other employees chosen by the disciplined employee.
   (d) Another employee chosen by unanimous consent by the four above-named members of the Board.

3. The Review Board interviews the necessary people in order to understand the situation, and will give its answer to the disciplined employee within seven days after all the necessary people are interviewed.

A more detailed explanation of the Appeal Procedure can be found in the CDC Appeal Policy. Your supervisor can get you a copy.

Although plaintiff testified that this page was not contained in his manual, he conceded that the index indicated that there was a page 9b which dealt with appeals. He further admitted that he served on a review board in another case involving a

---

2. There was no evidence that the beer involved in this case was not properly returned and noted in the inventory records prior to being placed in the trash. There also is no indication that plaintiff was involved in placing the beer in the trash. Unlike the salesmen, he had no motive to conceal out-dated beer.

discharged employee. Whether or not page 9b was omitted from plaintiff's book, the only conclusion which can be drawn from the evidence is that the described appellate procedure existed and plaintiff was aware of it.

Plaintiff points to another potential method of appeal which he says he utilized. An issue of the "Coors Courier," an Adolph Coors Company magazine, stated: "Coors is unique because it has two avenues of appeals available—the appeals board and the open door route." Plaintiff testified that under the "open door" policy "if you couldn't settle something with your supervisor, go to your next highest, and go to the next highest; if you wasn't satisfied go all the way to Colorado if you had to."

Paul Helmer, Employee Relations Director for CDC further explained the "open door" policy as one which allows the employee to seek review by going through the chain of command. Helmer said he was not part of that "line management" chain of command. After proceeding to contact the general manager and vice president of the division, in this case Vince Ventimiglia, plaintiff should have presented his complaint to the vice-president, the president, and Chairman of the Board of CDC. John McCormick is President of CDC, and Max Goodwin is Chairman of the Board. Pete Coors and Bill Coors are officers in Adolph Coors Company, a wholly autonomous corporation.

Accepting for the sake of argument that plaintiff was under no obligation to seek review by an appeals board if he resorted to the "open door" policy, we believe plaintiff failed to properly seek review through the "open door" method. He did not go step-by-step up the chain of command, and never attempted to contact the President or the Chairman of the Board of CDC. His informal attempt to contact Pete Coors cannot be construed as a proper appeal because Coors was not part of CDC management.

In short, plaintiff never made any real effort to obtain review of his discharge under the "open door" policy or by means of a review board, and he certainly did not exhaust the avenues of appeal available to him under the employee handbook. In situations involving collective bargaining agreements it has long been the rule in Missouri that the aggrieved employee "must exhaust the remedies provided by the agreement before resorting to the court for redress." *McKiness v. Western Union Telegraph Co.*, 667 S.W.2d 738, 741 (Mo.App.1984). This principle is no less applicable here where the rights asserted by plaintiff are contained in an employee handbook. The handbook and company policy provided for avenues of appeal which plaintiff was required to pursue before "resorting to the court for redress."

We are not persuaded by plaintiff's argument that appeal would have been futile in light of Winkleman's statement that he had talked to Vince Ventimiglia and Paul Helmer. As noted before, Helmer, who was not part of line management, and Ventimiglia had at least two superiors who could have been contacted under the "open door" policy. Furthermore, had plaintiff sought review under the handbook, two employees chosen by him would have served on the review board as well as a third employee named by the board. Plaintiff's point is ruled against him.

We next address plaintiff's contention that the trial court erred in directing a verdict against him on his slander count because he "proved sufficient facts to submit to the jury the question of whether [a] statement of employer to about 30 people that the plaintiff was terminated because he 'stole beer' was defamation per se."

The only evidence pertaining to the alleged statement was the testimony of John Pierson, a former CDC employee. Pierson testified that at a general sales meeting attended by about 30 CDC employees:

> Vince Ventimiglia[, the Vice President and General Manager of CDC,] came in the room to let us know that Lonnie Schnelting was fired for stealing, *actually was giving a case of beer away; and that's stealing company's property,* and that there was no way that we could put up with it. If one person starts it, then others could follow along. So the meet-

ing was to explain why Lonnie Schnelting was no longer employed at Coors.[3] Another pertinent exchange occurred on cross-examination:

Q. And the statement that you heard Vince Ventimiglia make with respect to Lonnie Schnelting was, correct me if I'm wrong, that Lonnie Schnelting was actually giving a case of beer away. Was that part of the statement?

A. That is correct.

Q. All right. And that that was equal or like an act of stealing.

A. That's correct.

■ Plaintiff cites the general rule that statements "which impute a crime" are categorized as slanderous per se and are actionable without proof of special damages. *Holman v. Ace Glass Co.*, 687 S.W.2d 562, 563 (Mo.App.1984). Whether a statement is actionable per se is a question of law to be determined by the court. *Id.*

Initially we note that plaintiff's evidence indicated that he acted with express or implied authority granted by Winkleman in allowing Green to take the out-dated beer. Were Ventimiglia's statement simply an assertion that plaintiff "stole beer" we believe it would have been defamatory per se and actionable upon a showing of the malice required to overcome CDC's qualified privilege to make such comments to its employees.[4] However, it is evident that Ventimiglia explained at least some of the undisputed underlying facts in his statement to the employees. Pierson testified that the employees were told plaintiff "actually was giving a case of beer away" and "that was equal [to] or like an act of steal-

ing." We must consider whether in this context the comment regarding "stealing" was a statement of fact or opinion. *Henry v. Halliburton*, 690 S.W.2d 775 (Mo. banc 1985).

The United States Supreme Court's historic decision in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) spawned a plethora of cases examining the impact of the First Amendment on the common law principles of libel and slander. *Henry* is another in the growing line of cases establishing new precedents in this area. We need not repeat here the scholarly historical discussion contained in *Henry;* however, we must briefly examine those portions of the *Henry* decision which are crucial to our resolution of this appeal.

In *Henry,* the supreme court addressed the fact/opinion dichotomy and held that "the First Amendment's absolute privilege for the expression of opinions encompasses more than political speech or the range of communications traditionally considered under the fair comment doctrine." *Id.* at 786. The court further stated:

> Where the common law has recognized a conditional privilege, including but not limited to the privilege for fair comment, the risk of protecting against a dishonestly held opinion is outweighed by both society's interest in the expression of the opinion and the individual's right to express his or her opinion, provided that the statement may be classified as an "opinion."

*Id.* at 786 n. 20. The court also held that opinions do not lose their protected status

---

**3.** CDC does not dispute Ventimiglia's authority, in his management position, to make statements on its behalf; nor does it contend that Ventimiglia was not acting as its agent when he made the alleged statement at the sales meeting. *See, Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506,511[3] (Mo. banc 1986).

**4.** It has been held that a communication is qualifiedly privileged "when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty...." *Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506,513 (Mo. banc 1986) (quoting

*Estes v. Lawton-Byrne-Bruner Insurance Agency Co.,* 437 S.W.2d 685,690 (Mo.App.1969)). The statement here pertained to matters of common interest to the employer, CDC, and the employees to whom it was communicated, *e.g.,* company policy regarding out-dated beer and the consequences of violating that policy. We conclude that the communication was qualifiedly privileged. In order to overcome a qualified privilege, a plaintiff must prove that the statement was made with knowledge that it was false or with reckless disregard for whether it was true or false at a time when the defendant had serious doubts as to whether it was true. *Id.* at 512.

merely because the declarant may be classified as a non-media defendant. *Id.* at 783.

Having previously noted that the communication here was made in a situation where the common law recognized a qualified privilege,[5] our reading of *Henry* leads us to the conclusion that, if properly categorized as an opinion, the communication was absolutely privileged under the First Amendment.

■ It is up to the trial judge in the first instance to determine whether the alleged statement is capable of being treated as an assertion of fact, although the jury may decide that it was not so understood. *Id.* at 788. In determining whether the communication was a statement of fact or an opinion: "courts should look to the totality of the circumstances. The importance of the totality of the circumstances test is that it looks to all relevant circumstances to determine whether a given statement is actionable." *Id.*

■ It is apparent from Pierson's testimony that Ventimiglia explained that plaintiff had given a case of beer away, and that the company regarded that as stealing. While CDC's characterization was a harsh one, and one to which plaintiff might reasonably take exception, we believe it would have been understood as an opinion and not an assertion of any facts other than those admitted by plaintiff to be true. Having been correctly told of plaintiff's actions, the listeners were free to draw their own conclusions about whether those acts amounted to stealing. In light of the employees' knowledge of the practice at CDC regarding old beer, it is unlikely that they would have concluded plaintiff was guilty of the crime of stealing. We note also that the statement was made in the often volatile arena of labor relations. CDC was apparently having problems with its inventory. While the language used was exaggerated, it was the sort of admonition that might be expected in an effort to impress upon the employees the importance of complying with the company policy regarding

old beer. In this context, the statement by CDC's agent was absolutely privileged as an expression of opinion. Plaintiff's point is ruled against him.

Plaintiff also asserts that the court erred in dismissing his action brought pursuant to § 290.140, RSMo 1986, the "service letter" statute. The service letter issued to plaintiff stated that plaintiff was terminated "solely as a result of [his] decision to authorize and permit the theft of company property, to-wit, beer in stock."

■ CDC's liability for failure to issue a proper service letter rests upon a showing that plaintiff was dismissed for a reason ulterior to the ground stated. *Newman v. Greater Kansas City Baptist and Community Hospital Association,* 604 S.W.2d 619 (Mo.App.1980). The burden of proof on the plaintiff is negative in character: he must show that the reason for discharge stated in the letter is not true. *Id.* at 622. Plaintiff does not have to prove the true reason for discharge because the true reason "is peculiarly within the knowledge of the employer." *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 57 (Mo. banc 1981). There is, of course, "a distinction between the reasons themselves being true and the reasons given for discharge being the actual ones for which plaintiff was dismissed. The statute only requires the latter." *Id.* at 56 n. 2.

■ In light of those principles and our standard of review, we believe plaintiff's point is well taken. Plaintiff's evidence indicated that out-dated beer was not "beer in stock" and a jury could find that plaintiff did not "authorize the *theft*" of any beer, old or new. We note in this regard the testimony about the common practice of employees giving old beer away with the knowledge of Winkleman and others in management. Plaintiff's evidence indicated that Winkleman at least implicitly approved those practices. Furthermore, there was testimony that Winkleman told plaintiff, in reference to the same janitor involved in this case, that "*anything* that man finds in a dumpster or the trash" he

---

**5.** *See,* note 4, *supra.*

can take. This would seem to be express authorization for the action taken by plaintiff.

Plaintiff's evidence would support a finding that he was not guilty of the crime alleged in the service letter and that the reason stated in the letter was not the true reason he was discharged. The evidence indicates that Helmer, Ventimiglia, and Winkleman were all aware that the beer involved was out-dated. In response to Helmer's question to Winkleman about whether some disciplinary action short of termination would be appropriate, Winkleman stated that "[he] could not trust Mr. Schnelting anymore." Plaintiff testified that he and Winkleman "didn't see eye-to-eye on a lot of things," although he did not think they were "bitter enemies." From this evidence and plaintiff's satisfactory work record prior to the incident involved in this dispute, it might be inferred that plaintiff was fired because of a personality conflict with Winkleman, not because, acting with either express or implied authority, he allowed Green to take the old beer. That, of course, is a motive ulterior to the reason stated in the letter.

Furthermore, whether or not CDC's contention that plaintiff was fired because he gave old beer away is credible, that was not the reason stated in the letter. The letter referred to "theft" and "beer *in stock*." As we stated in *Crompton v. Curtis-Toledo, Inc.*, 661 S.W.2d 645,648 (Mo. App.1983), the "purpose of § 290.140 is to deter employers from destroying or severely impairing the employability of former employees by furnishing false or misleading information as to their service or false reasons for their discharge." Plaintiff need not establish the true motive or reason for his discharge, and he made a prima facie showing that he was not fired for the reasons contained in the service letter.

CDC's reliance on *Newman* is misplaced. In that case the service letter stated that plaintiff was discharged for "theft of personal property on hospital premises." The western district stated:

> [T]he evidence that [plaintiff] did not steal proves merely that the statement that she did steal was false, not that the reason stated for discharge was false. In fact, the evidence allows no inference other than that she was terminated because—without pretext, guile or ulterior motive—the hospital believed she stole. There was no proof that the reason given was a foil for a true but undisclosed cause.

604 S.W.2d at 622. Here, as we have discussed, there was evidence permitting an inference that CDC did *not* believe, "without pretext, guile or ulterior motive," that plaintiff authorized the "theft" of "beer in stock," and that plaintiff was fired for a reason ulterior to that stated in the service letter. Plaintiff adduced evidence sufficient to support a finding that CDC violated § 290.140 and the trial court's dismissal of Count II was erroneous.

Plaintiff finally contends that he made a submissible case of prima facie tort. This point is without merit and no jurisprudential purpose would be served by an extended discussion. We affirm this point pursuant to Rule 84.16(b).

For the reasons stated in this opinion, we reverse and remand the judgment in favor of CDC on the service letter count and affirm the trial court's judgment in all other respects.

SMITH, P.J., and DOWD, J., concur.